Opinion issued December 9, 2004







            










In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00518-CV
____________
 
CENTURION PLANNING CORPORATION, INC.
AND THOMAS C. KNICKERBOCKER, Appellants
 
V.
 
SEABROOK VENTURE II, Appellee
 

 
 
On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2000-01560
 

 
 
O P I N I O N
          Appellants, Centurion Planning Corporation, Inc. (Centurion) and Thomas C.
Knickerbocker (Knickerbocker), challenge the trial court’s judgment, entered after
a jury verdict, declaring that Centurion’s mechanic’s and materialman’s lien on real
property owned by appellee, Seabrook Venture II (Venture), was null and void
because there was no written contract between Centurion and Venture and because
Centurion did not have any lien rights on the property as Centurion was not engaged
in the practice of engineering


 and the lien was fraudulent.



          In four issues, Centurion and Knickerbocker contend that the trial court erred
in (1) submitting to the jury a question concerning whether Centurion and
Knickerbocker made, presented, or used a fraudulent lien with the intent to cause
Venture to suffer financial injury; (2) applying the Uniform Declaratory Judgment
Act


 to Knickerbocker personally and holding him personally liable for filing a
fraudulent lien; (3) excluding evidence that Centurion was “in compliance with the
rules and regulations of the Texas Board of Professional Engineers”; and (4)
submitting a jury instruction that Centurion and Knickerbocker assert constituted an
impermissible comment on the weight of the evidence. We affirm.
Facts
          On October 20, 1998, Theodore McCollum Jr. (McCollum) entered into an
earnest money contract with Bayport 47 Limited to acquire a 53-acre tract of land in
Seabrook, Texas. On January 20, 1999, McCollum purchased 14 acres of the 53-acre
tract and conveyed it to Seabrook United Methodist Church. One month later,
McCollum purchased the remaining 39 acres.
          On August 19, 1999, McCollum, on behalf of McCollum Interests, L.L.C., 
entered into a joint venture agreement with John Boswell, on behalf of Pacific Ride
Development Company, L.L.C. This agreement created Venture for the purpose of
developing the 39 acres into a housing subdivision. The following day, McCollum
conveyed the 39 acres to Venture.
          Following the creation of Venture, McCollum contacted Knickerbocker, the
President and sole shareholder of Centurion, and requested that Centurion prepare a
preliminary plat for the 39 acres and submit it to Seabrook for approval. McCollum
specified that the plat had to meet all of the city’s conditions and ordinances and be
approved without requiring any variances. Knickerbocker orally agreed to
McCollum’s terms, and Centurion began working on the preliminary plat.
          In October 1999, McCollum and Kickerbocker met with several city officials
to review the initial plat prepared by Centurion. At this meeting, the city officials
discovered several problems with the plat that needed to be corrected before it could
be submitted. McCollum instructed Knickerbocker to make the necessary changes,
but Knickerbocker submitted the plat without doing so.
          When McCollum learned what Knickerbocker had done, he went to Seabrook
City Hall and recovered all documents on file relating to the plat. McCollum then
sent a letter to Centurion terminating its services because McCollum “had a lack of
confidence” in Centurion and “was disgusted” that Knickerbocker had not done what
McCollum had asked him to do. In response, Knickerbocker sent a letter to
McCollum demanding payment in the amount of $39,416.30 for work performed by
Centurion, but McCollum refused to pay.
          Knickerbocker subsequently filed, on behalf of Centurion, a Notice of Claim
of Lien and Affidavit of Mechanic’s and Materialman’s Lien on the entire 53-acre
tract of land, including the 14 acres owned by Seabrook United Methodist Church.


 
Knickerbocker filed the lien for “labor and materials” provided to Venture in the
amount of $39,416.30. McCollum requested that Centurion release the lien from 39
acres owned by the Venture, but Knickerbocker refused.
          Venture then filed this lawsuit seeking a declaration that Centurion’s lien was
null and void because Centurion and Knickerbocker had violated certain provisions
of the Property Code and the former Engineering Practice Act.


 Moreover, Venture
alleged that Centurion and Knickerbocker had violated section 12.002 of the Civil
Practice and Remedies Code because they knowingly had made, presented, and used
a fraudulent lien.


 In response, Centurion and Knickerbocker filed counterclaims
alleging that Venture owed Centurion $18,301.66 and that Centurion was entitled to
foreclose on the lien for this amount.
          Following a jury trial, the trial court declared that Centurion did not have any
lien rights or lien claims against Venture and that Centurion’s lien against the 39 acre
property was “null, void, invalid, unenforceable and of no effect” because (1) there
was no written contract between Venture and Centurion; (2) Centurion and
Knickerbocker had violated the former Engineering Practice Act and were therefore
not entitled to a lien under Property Code section 53.021(c); and (3) Centurion and
Knickerbocker had violated Civil Practice and Remedies Code section 12.002 by
making, presenting, and using the lien with the knowledge that it was a fraudulent
lien. The trial court awarded Venture statutory damages, exemplary damages,
attorney’s fees, reasonable expenses, and costs.Fraudulent Lien Question
          In their first issue, Centurion and Knickerbocker argue that the trial court erred
in submitting to the jury a question concerning whether Centurion and Knickerbocker
made, presented, or used a fraudulent lien with the intent to cause Venture to suffer
financial injury because (1) the question was “immaterial and of no legal
consequence,” (2) there was no evidence that they made, presented, or used a
document with knowledge that the document was a fraudulent lien, and (3) the
instruction accompanying the question was defective.
          Question number 7 of the jury charge reads as follows:
Did Centurion or Knickerbocker make, present or use a document with
knowledge that the document was a fraudulent lien or claim against real
property or an interest in real property with the intent that the document
be given the legal effect of evidencing a valid lien or claim against real
property or an interest in real property with the intent to cause [Venture]
to suffer financial injury?
 
A lien is fraudulent if the person who files it has actual knowledge that
the lien was not valid at the time it was filed.

The jury answered this question “yes” as to both Centurion and Knickerbocker.

Materiality
          Centurion and Knickerbocker argue that question number 7 was immaterial
because it premised a finding of liability on a statute, section 12.002 of the Civil
Practice and Remedies Code, which, they assert, does not apply to the facts of this
case. An appellate court may disregard a jury finding on a question that is immaterial. 
See Spencer v. Eagle Star Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex. 1994). A jury
question is immaterial if it should not have been submitted, if it was rendered
immaterial by other findings, or if it called for a finding not within the jury’s
province, such as a question of law. Id.
          Centurion and Knickerbocker contend that the Legislature did not intend for
Chapter 12 of the Civil Practice and Remedies Code to apply to a mechanic’s and
materialman’s lien filed under the laws of the State of Texas and that, therefore,
question number 7 was immaterial and should not have been submitted to the jury. 
Centurion and Knickerbocker assert that the Legislature enacted Chapter 12, and
section 12.002 in particular, to “protect citizens from persons, particularly members
of an anti-government group called ‘the Republic of Texas,’ who were flooding
courts and clerks’ offices with the filing of fake documents purporting to be under
laws other than the laws of the State of Texas.”
          Matters of statutory construction are questions of law for the courts to decide. 
Harris County Water Control and Improvement Dist. v. Duke, 59 S.W.3d 333, 335-36
(Tex. App.—Houston [1st Dist.] 2001, no pet.). Our objective in construing a statute
is to determine and give effect to the intent of the lawmaking body. Id. at 336. In so
doing, we look first to the plain and common meaning of the statute’s words. Id. We
also construe the statute in light of the entire body of law existing at the time of its
enactment. Id. Further, we consider the entire statute, not simply the disputed
portions. Id. Each provision must be construed in the context of the entire statute of
which it is a part. Id. We also should not adopt a construction that would render a
law or provision absurd or meaningless. Id. In construing a statute, we may consider
(1) the object sought to be obtained; (2) the circumstances under which the statute
was enacted; (3) its legislative history; (4) any common law or former statutory
provisions, including laws on the same or similar subjects; (5) the consequences of
a particular construction; (6) any administrative construction of the statute; and
(7) the title (caption), preamble, and emergency provision. Tex. Gov’t Code Ann.
§ 311.023 (Vernon 1998). We review Chapter 12 of the Civil Practice and Remedies
Code with these rules in mind.
          Section 12.002 provides as follows:
(a)A person may not make, present, or use a document or other
record with:
 
(1)knowledge that the document or other record is a fraudulent
court record or a fraudulent lien or claim against real or
personal property or an interest in real or personal
property;
 
(2)intent that the document or other record be given the same
legal effect as a court record or document of a court created
by or established under the constitution or laws of this state
or the United States or another entity listed in Section
37.01, Penal Code, evidencing a valid lien or claim against
real or personal property or an interest in real or personal
property; and
 
(3)intent to cause another person to suffer:
 
(A)physical injury;
 
(B)financial injury; or
 
(C)mental anguish or emotional distress.
 
(b) A person who violates Subsection (a) is liable to each injured
person for:
 
(1) the greater of:
 
(A)$10,000; or
 
(B)the actual damages caused by the violation;
 
                    (2)     court costs;
 
                    (3)     reasonable attorney’s fees; and
 
(4)exemplary damages in an amount determined by the
court.

Tex. Civ. Prac. & Rem. Code Ann. § 12.002 (Vernon 2002) (emphasis added).

          There is nothing in the plain language of section 12.002 to indicate, as
Centurion and Knickerbocker maintain, that this section applies exclusively to cases
where members of anti-government groups file fake documents “purporting to be
under laws other than the laws of the State of Texas” from bogus “‘common-law’
courts.” The Legislature could have chosen to limit the application of Chapter 12 to
documents or records from sham courts, but it did not expressly do so. In fact,
Chapter 12 is entitled “Liability Related to a Fraudulent Court Record or a
Fraudulent Lien or Claim Filed Against Real or Personal Property.” Tex. Civ. Prac.
& Rem. Code Ann. §§ 12.001–.007 (Vernon 2002 & Supp. 2004-2005) (emphasis
added). The plain language of section 12.002(a) expressly prohibits a person from
making, presenting or using a document (1) with knowledge that the document is “a
fraudulent court record or a fraudulent lien or claim” against real property, (2) intent
that the document be given the same legal effect as a court record or document of a
court evidencing a valid lien or claim against real property, and (3) intent to cause
another person to suffer financial injury. Id. § 12.002(a) (emphasis added). Section
12.002(a)(2) does not limit liability only to fraudulent court documents or records
which are made, presented or used by anti-government groups. Rather, it expressly
applies to any document or record that is “a fraudulent lien or claim” against real or
personal property and that is intended to be “given the same legal effect” as a court
record or document “evidencing a valid lien or claim against real property.” Id.
§ 12.002(a)(1), (2).
          Moreover, we disagree with the assumption, implicit in Centurion’s and
Knickerbocker’s argument, that the Legislature concluded that a fraudulent lien that
purports to be filed under laws other than the laws of the State of Texas from bogus
courts is more damaging to Texas property owners than fraudulent liens that purport
to be filed under the actual laws of this state. Our review of the plain and common
meaning of the words of Chapter 12 reveals that the Legislature intended to provide
a civil action for injunctive relief and monetary damages to all persons owning an
interest in real or personal property against which a fraudulent lien is filed, not just
victims of anti-government groups filing purported liens from sham courts. In fact,
section 12.003 actually distinguishes between cases involving “fraudulent liens” and
“fraudulent judgment liens.” It provides that, “in the case of a fraudulent lien or
claim against real or personal property or an interest in real or personal property,” the
obligor or debtor, or a person who owns an interest in the real or personal property
may bring an action. Id. § 12.003(a)(8). In the case of a “fraudulent judgment lien,”
the person against whom the judgment is entered may bring an action. Id. §
12.003(a)(7).
          Accordingly, we disagree with Centurion and Knickerbocker’s contention that
Chapter 12 does not apply to the facts of this case, and we hold that the trial court did
not err in submitting question number 7 to the jury on the grounds that it was
“immaterial.”
No Evidence
          Centurion and Knickerbocker also argue that the trial court erred in submitting
question number 7 to the jury because there was no evidence that they made,
presented, or used a document with knowledge that the document was fraudulent “as
defined by Gov. Code § 51.901(c).” See Tex. Gov’t Code Ann. § 51.901(c)
(Vernon 1998).
          When reviewing a legal sufficiency question, we consider only the evidence
and inferences that tend to support a finding, and we disregard all evidence and
inferences to the contrary. Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84
(Tex. 1992). If there is more than a scintilla of evidence to support the finding, the
no-evidence challenge fails. Id. More than a scintilla of evidence exists when the
evidence, as a whole, supporting the finding “rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions.” Merrell Dow
Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).
          Centurion and Knickerbocker point out that, although the term “fraudulent” is
not defined in Chapter 12, section 12.006 references that term as it is used in the
Government Code. Section 12.006 provides, in pertinent part, as follows:
The court shall award the plaintiff the costs of bringing this action if:
 
(1)the plaintiff prevails; and
 
(2)the court finds that the defendant, at the time the defendant
caused the recorded document to be recorded or filed, knew or
should have known that the recorded document is fraudulent, as
described by Section 51.901(c), Government Code.

Tex. Civ. Prac. & Rem. Code Ann. § 12.006(a) (emphasis added). Section
51.901(c) of the Government Code provides that, “[f]or purposes of this section,” a
document or instrument “is presumed to be fraudulent” if:
[T]he document or instrument purports to create a lien or assert a claim
against real or personal property or an interest in real or personal
property and:
 
(A)is not a document or instrument provided for by the constitution
or laws of this state or of the United States;
 
(B)is not created by implied or express consent or agreement of the
obligor, debtor, or the owner of the real or personal property or an
interest in the real or personal property, if required under the laws
of this state, or by implied or express consent or agreement of an
agent, fiduciary, or other representative of that person; or
 
(C)is not an equitable, constructive, or other lien imposed by a court
with the jurisdiction created or established under the construction
or laws of this state or of the United States.

Tex. Gov’t Code Ann. § 51.901(c)(2) (Vernon 1998).

          Centurion and Knickerbocker note that Chapter 51 of the Government Code
“was part of the same bill” that enacted Chapter 12 of the Civil Practice and
Remedies Code. They also note that “the history preceding the passage of [section
12.002] and [s]ection 51.901(c) show[s] that these two code sections were enacted to
deny legitimacy to fake documents without regard to the validity of the claimed
interest or the claims of the parties.” Centurion and Knickerbocker assert, thus, that
the Legislature intended for the term “fraudulent” as used in Chapter 12 to have the
same meaning as that term is described in Government Code section 51.091(c). 
Moreover, they argue that, because they proved that their lien was filed under the
laws of the State of Texas, the lien was not fraudulent under section 51.091(c). 
          However, section 51.091(c) does not define the term “fraudulent”; it 
establishes a “presumption” that a document or instrument is fraudulent under certain
circumstances. Moreover, section 12.006, entitled “Plaintiff’s Costs,” simply
provides the circumstances under which a plaintiff “shall” recover the “costs of
bringing the action” in addition to the plaintiff’s damages awarded under section
12.002. If the Legislature had wanted to define the term “fraudulent” as used for all
purposes in Chapter 12, it could have done so. Instead, the Legislature referenced the
term fraudulent “as described” in Government Code section 51.901(c) in regard only
to the recovery of plaintiff’s costs in section 12.006. We cannot read section 12.006’s
reference to the term fraudulent “as described by Section 51.901(c), Government
Code” as providing a definition of the term for all of Chapter 12.
          In conducting our legal sufficiency review of the evidence, we note that
Property Code section 53.021(c) provides, in pertinent part, that “[a]n architect,
engineer, or surveyor who prepares a plan or plat under or by virtue of a written
contract with the owner . . . in connection with the actual or proposed design,
construction, or repair of improvements on real property . . . has a lien on the
property. Tex. Prop. Code Ann. § 53.021(c) (Vernon Supp. 2004-2005) (emphasis
added). Here, McCollum testified that he did not enter into a written contract on
behalf of himself or Venture with either Knickerbocker or Centurion. Moreover,
Knickerbocker testified that, after McCollum refused to pay for work that Centurion
had done, Knickerbocker, on Centurion’s behalf, filed a mechanic’s and
materialman’s lien against the entire 53-acre tract of land. Taken together, this
testimony constituted more than a scintilla of evidence establishing that
Knickerbocker had violated section 12.002 when he “made, presented, or used the
lien” knowing, based on the lack of a written contract, that the lien was invalid and
intending that it be given the same legal effect as a valid lien. Additionally, because
Centurion conceded that Knickerbocker was acting on its behalf, Centurion was
subject to vicarious liability for Knickerbocker’s violation of section 12.002. See
Baptist Mem’l Hosp. System v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998) (noting
that, under doctrine of respondeat superior, employer is vicariously liable for tortious
acts of employee acting within scope of employment).
          Accordingly, we hold that the trial court did not err in submitting question
number 7 to the jury on the grounds that the evidence was legally insufficient to
support the submission of the question.
Defective Definition
          Centurion and Knickerbocker next argue that the trial court erred in submitting
question number 7 to the jury because the question contained a defective instruction. 
As noted above, the trial court instructed the jury that “[a] lien is fraudulent if the
person who files it has actual knowledge that the lien was not valid at the time it was
filed.” Centurion and Knickerbocker assert that, instead of submitting this instruction,
the trial court should have defined the term “fraudulent lien” by referencing the
presumption set out in Government Code section 51.901(c).
          However, to preserve error in the jury charge, a party must timely and plainly
make the trial court aware of the complaint and obtain a ruling. Tex. R. Civ. P. 274;
State Dept. of Highways v. Payne, 838 S.W.2d 235, 241 (Tex. 1992). A party is
required to object before the trial court submits an erroneous question, instruction or
definition. Tex. R. Civ. P. 274; Payne, 838 S.W.2d at 241.
          At the charge conference, Centurion and Knickerbocker objected to question
number 7 as follows:
We especially object to Question No. 7. That relates to the pleading and
claim of [Venture] that [Centurion and Knickerbocker] violated section
12.00[2] of the Texas Civil Practice and Remedies Code. And without
going over the same objections that I could in my motion for directed
verdict, it’s just generally our grounds . . . that there’s no evidence
whatsoever that [Centurion and Knickerbocker] violated the section as
contended by the Legislature of the state of Texas, that the Legislature
intended by the enactment of this section that it would be a violation if
anyone attempted to file a lien that was not pursuant to the laws of the
state of Texas or the Constitution of the state of Texas. And the lien
affidavit and the evidence clearly shows that my client, [Centurion and
Knickerbocker], were attempting to file the lien affidavit pursuant to the
state of Texas and this Constitution of the state of Texas. Even if
[Venture] is correct, that there were mistakes or errors or incorrect
information set forth in the lien affidavit, we contend that . . . would not
make [Centurion and Knickerbocker] liable under this Act. Therefore,
[we] object on the grounds of no evidence.

(Emphasis added.) Centurion and Knickerbocker objected to question number 7, not
on the grounds that it included a defective instruction, but “on the grounds of no
evidence.” A party cannot enlarge on appeal an objection made in the trial court. 
Operation Rescue-Nat’l v. Planned Parenthood of Houston and Southeast Tex., Inc.,
937 S.W.2d 60, 70 (Tex. App.—Houston [14th Dist.] 1996), aff’d as modified, 975
S.W.2d 546 (Tex. 1998). An objection on appeal that is not the same as that which
was urged at trial presents nothing for appellate review. Id. Nor can a party raise a
new objection to the trial court’s charge for the first time on appeal. Tex. R. App. P.
33.1(a); Tex. R. Civ. P. 274. Accordingly, we hold that Centurion and Knickerbocker
have waived any error with respect to the submission of the complained of
instruction.
          We overrule Centurion’s and Knickerbocker’s first issue.
Declaratory Judgment
          In their second issue, Centurion and Knickerbocker argue that the trial court
erred in applying the Declaratory Judgment Act to Knickerbocker personally and in
finding him personally liable for filing a fraudulent lien because “there was no
justiciable controversy between [Venture] and Knickerbocker.”
          A declaratory judgment is appropriate only if a justiciable controversy exists
as to the rights and status of the parties and the controversy will be resolved by the
declaration sought. Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995). 
To constitute a justiciable controversy, there must exist a real and substantial
controversy involving a genuine conflict of tangible interests and not merely a
theoretical dispute. Id. If a justiciable controversy does not exist between the parties,
a court must dismiss the case for lack of jurisdiction, even if the issue is not raised by
the parties. Lavely v. Heafner, 976 S.W.2d 896, 897 (Tex. App.—Houston [14th
Dist.] 1998, no pet.).
          The jury found that both Centurion and Knickerbocker had made, presented,
or used a document with knowledge that the document was a fraudulent lien or claim
against real property or an interest in real property with the intent that the document
be given the legal effect of evidencing a valid lien or claim against real property or
an interest in real property and with the intent to cause Venture to suffer financial
injury. The trial court then declared that Centurion and Knickerbocker had violated
(1) Chapter 53 of the Property Code, (2) the former Texas Engineering Practice Act,
and (3) Civil Practice and Remedies Code section 12.002.
          Centurion and Knickerbocker assert that Venture did not plead or prove any
theory for a judgment against Knickerbocker personally and that there were,
therefore, no rights to be declared as between Venture and Knickerbocker. They note
that they “objected to [Venture’s] attempt to pierce the corporate veil in its proposed
judgment,” and they contend that Knickerbocker, as an officer of Centurion, was not
liable to the Venture for its damages, attorney’s fees, expenses and costs.
          However, it is a “longstanding rule” in Texas that “a corporate agent is
personally liable for his own fraudulent or tortious acts.” Miller v. Keyser, 90 S.W.3d
712, 717 (Tex. 2002). In Miller, the Texas Supreme Court held that a corporate agent
may be held personally liable under the Deceptive Trade Practices–Consumer
Protection Act


 for personally making misrepresentations. Id. The Court explained
that such liability is based on the agent’s own actions, not his status as an agent. Id. 
We find this analysis equally applicable to violations of Chapter 12 of the Civil
Practice and Remedies Code.
          Here, as noted above, the jury expressly found that Knickerbocker personally
made, presented, or used a document with the knowledge that the document was a
fraudulent lien or claim against real property or an interest in real property with the
intent that the document be given the legal effect of evidencing a valid lien or claim
against real property or an interest in real property and with the intent to cause
Venture to suffer financial injury. The evidence supports the jury’s finding and the
trial court’s declarations.
          Knickerbocker testified that Centurion had offered and had attempted to
practice engineering services; however, Knickerbocker was not a licensed engineer. 
Moreover, the evidence indicated that Centurion did not have a regular, full-time
employee who was a licensed engineer and who provided engineering services or
supervised the provision of any engineering services.


 Although Centurion and
Knickerbocker presented Dexter Jones as Centurion’s “Director of Engineering,” the
jury expressly found that Jones was “not a regular[,] full-time employee of Centurion”
during the time in question. Jones, himself, testified that he was an “independent
contractor” for Centurion and was not a full-time employee.
          Moreover, McCollum testified that he did not enter into a written contract on
behalf of himself or Venture with either Knickerbocker or Centurion. Knickerbocker
testified that, after McCollum refused to pay for work that Centurion had done,
Knickerbocker, on Centurion’s behalf, filed the mechanic’s and materialman’s lien
against the entire 53-acre tract of land. In fact, Knickerbocker signed, verified, and
personally mailed the lien for filing.
          Taken together, this evidence demonstrated that Knickerbocker violated section
12.002 when he “made, presented, or used” the lien knowing that Centurion was not
entitled to the lien under Property Code section 53.021(c) because (1) there was no
written contract between Centurion and Venture and (2) Centurion was not engaged
in the practice of engineering in compliance with the requirements of the former
Engineering Practice Act. Accordingly, we hold that Venture established that a “real
and substantial controversy” existed between itself and Knickerbocker.
          We overrule Centurion’s and Knickerbocker’s second issue.
Exclusion of Evidence
          In their third issue, Centurion and Knickerbocker contend that the trial court
abused its discretion in excluding an exhibit which was offered to show that
Centurion was in voluntary compliance with the rules and regulations of the Texas
Board of Professional Engineers and the former Engineering Practice Act.
          A trial court’s decision to exclude evidence is reviewed under an abuse of
discretion standard. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex.
1995). In addition to showing an abuse of discretion, a party complaining of error in
the exclusion of evidence must also show that the trial court’s error was reasonably
calculated to cause, and probably did cause, the rendition of an improper judgment. 
Id. at 753-54; see Tex. R. App. P. 44.1(a)(1).
          Centurion and Knickerbocker offered into evidence Defendants’ Exhibit 15A,
a certified copy of a document from the Texas Board of Professional Engineers,
which states that, as of January 20, 1999, Centurion was in “voluntary compliance”
with the regulations of the Texas Board of Professional Engineers and the former
Engineering Practice Act. The trial court sustained Venture’s objection to the
document as irrelevant and as hearsay. Centurion and Knickerbocker argue that the
exhibit should have been admitted into evidence because “the central issue to
[Venture’s] claims and defenses was that Centurion violated the [former] Texas
Engineering Practice Act.”
          However, Venture did not allege simply that Centurion had violated the former
Engineering Practice Act. Rather, Venture alleged that Centurion was not entitled to
be compensated for preparing the preliminary plat because Centurion was not
engaged in the practice of engineering because it did not have a licensed engineer as
a regular, full-time employee during the period from August to October of 1999 as
required by the Act. As noted above, the former Act prohibited a corporation from
holding itself out as being engaged in the practice of engineering unless all of its
engineering services were “either personally performed by a licensed engineer or
under the direct supervision of a licensed engineer who [was] a regular full-time
employee.”



          Defendants’ Exhibit 15A did not specify that Centurion had a licensed engineer
as a regular, full-time employee. Nor did it address the appropriate time period. 
Centurion had worked on the preliminary plat for Venture between August and
October of 1999; however, Defendant’s Exhibit 15A demonstrates that the Texas
Board of Professional Engineers made its determination in January 1999, six months
before the time period in question. Accordingly, we hold that the trial court did not
abuse its discretion in excluding Defendants’ Exhibit 15A on the grounds that it was
irrelevant.
          We overrule Centurion’s and Knickerbocker’s third issue.
Employment Status
          Question number 1 of the jury charge asked the jury to make a factual
determination concerning the employment status of Dexter Jones. In their fourth
issue, Centurion and Knickerbocker contend that the trial court erred in submitting
a definition of “employee” and “independent contractor” in question number 1
without the additional instruction that “Centurion was not required to direct the
detail” of Jones’s work. Centurion and Knickerbocker assert that, without their
requested instruction, the included definitions “constituted an impermissible comment
on the weight of the evidence.” They further contend that the trial court erred in
submitting the definition of “independent contractor” because there was insufficient
evidence that Jones was in pursuit of an independent business at the time that he
worked for Centurion.
          We review a trial court’s decision on the submission of jury definitions and
instructions under an abuse of discretion standard, and we note that trial courts have
“wide discretion to determine sufficiency of definitions and instructions.” Plainsman
Trading Co. v. Crews, 898 S.W.2d 786, 791 (Tex. 1995). When a trial court refuses
to submit a requested instruction, our review is focused upon the issue of whether the
request was reasonably necessary to enable the jury to render a proper verdict. 
Vinson & Elkins v. Moran, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.]
1997, writ dism’d by agr.).
          Although the court in its charge may not comment directly on the weight of the
evidence, the charge is not objectionable because it “incidentally constitutes a
comment on the weight of the evidence or advises the jury of the effect of their
answers when it is properly a part of an instruction or definition.” Tex. R. Civ. P.
277. To be a direct comment on the weight of the evidence, the language must
suggest the trial court’s opinion concerning the issue. Maddox v. Denka Chem.
Corp., 930 S.W.2d 668, 671 (Tex. App.—Houston [1st Dist.] 1996, no writ).
          Question number 1 reads as follows:
Do you find that Dexter Jones was not a regular full time employee of
Centurion from August 21, 1999 through October 5, 1999?
 
An “employee” is a person in the service of another with the
understanding, express or implied, that such other person has the right
to direct the details of the work and not merely the result to be
accomplished.
 
A person is not acting as an employee if he is acting as an “independent
contractor.” An independent contractor is a person who, in pursuit of an
independent business, undertakes to do specific work for another person,
using his own means and methods without submitting himself to the
control of such other person with respect to the details of the work, and
who represents the will of such other person only as to the results of his
work and not as to the means by which it is accomplished.

Centurion and Knickerbocker requested that the jury be further instructed that
“Centurion was not required to direct the detail of Dexter Jones’s work requiring his
engineering expertise.” However, the trial court refused to include this instruction
and the jury subsequently answered the question “yes.”
          Centurion and Knickerbocker argue that “the court’s instruction left little room
for the jury to find any[]thing other than that [Jones] was not a full-time employee
because it instructed that if Jones did not submit himself to the control of Centurion
and it’s [sic] owner, a non-engineer, with respect to the details of engineering work,
then Jones was an independent contractor.” However, Centurion and Knickerbocker
cite no authority to show either that their requested instruction was a correct
statement of the law or that they were entitled to have the instruction submitted to the
jury. Moreover, Centurion and Knickerbocker do not logically explain how the trial
court’s refusal to submit their additional instruction suggested to the jury the trial
court’s opinion concerning the issue.
          In contrast, the definitions submitted by the trial court, which followed
verbatim the definitions provided by Texas Pattern Jury Charge,


 have been held to
be adequate instructions on employee-independent contractor law. See Weidner v.
Sanchez, 14 S.W.3d 353, 376 (Tex. App.—Houston [14th Dist.] 2000, no pet.). 
Accordingly, we hold that the trial court did not abuse its discretion in submitting the
definitions and in refusing Centurion’s and Knickerbocker’s requested instruction on
the grounds that the definitions constituted an improper comment on the weight of the
evidence.
          In regard to Centurion’s and Knickerbocker’s assertion that there was
“insufficient evidence that Jones was in pursuit of an independent business,” we
conclude that, if a person is retained as an independent contractor, then he is
necessarily pursuing a business independent from that of the person who retains him. 
Here, Jones testified that he worked as an independent contractor for Centurion and
that he was not a full-time employee. While Jones was working for Centurion, he had
other clients and he worked part-time for Centurion and part-time for his other clients. 
Additionally, Nancy Heeth, Centurion’s bookkeeper, testified that Jones was paid by
the hour and that Centurion did not withhold state or federal taxes from his paycheck. 
Accordingly, we hold that the trial court did not abuse its discretion in submitting the
definitions to the jury on the grounds that there was insufficient evidence that Jones
was in pursuit of an independent business.
          We overrule Centurion’s and Knickerbocker’s fourth issue.
 

Conclusion
          We affirm the judgment of the trial court.
 

                                                                        Terry Jennings
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Jennings and Higley.