**Mario PEREZ, Appellant,**

v.

**HUNG KIEN LUU and Microcache Computers, Inc., Appellees.**

No. 11–06–00167–CV.

Court of Appeals of Texas, Eastland.

Nov. 1, 2007.

Betty Stovall (Kit) Clark, Law Office of Betty Stovall (Kit) Clark, Houston, for appellant.

Scott K. Bui, Scott K. Bui & Associates, Houston, for appellees.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

1. Deceptive Trade Practices Act, TEX. BUS. & COM.CODE ANN. § 17.41 et seq. (Vernon 2002 & Supp. 2006).

**OPINION**

RICK STRANGE, Justice.

This is a DTPA claim.[1] Mario Perez filed suit against Hung Kien Luu and MicroCache Computers, Inc., contending that they violated the DTPA by refusing to sell him 100 hard drives at the advertised price of $1 each. The trial court conducted a bench trial and entered a take-nothing judgment. We affirm.

### I. *Background Facts*

MicroCache was a computer-related business. It maintained a website that listed computer parts, including hard drives, for sale. Perez was a refinery operator for Shell Oil Refinery and repaired computers as a side business. The night of July 15, he was looking for hard drives on the internet and went to MicroCache's website. He noticed that Seagate 146GB hard drives were listed for $1 each. Perez ordered 100 hard drives, paid MicroCache $228.25, and received a confirmation e-mail. The following day, he received an e-mail from Luu, a MicroCache officer, advising him that there was a system error and that his payment was being refunded. Perez e-mailed a response advising Luu that he did not want a refund but wanted the 100 hard drives and that he expected delivery within ten days. Perez checked MicroCache's website again and saw that the hard drive's price was now $1,195 each.

MicroCache refused to sell the hard drives for $1, and Perez filed suit against Luu and MicroCache. The case was tried to the court without a jury. The court found that Perez placed an order for 100 hard drives and paid MicroCache, that Mi-

croCache's website had a pricing error, that the website advised customers that MicroCache had the right to correct any pricing error, that Perez was aware of this right, that MicroCache refunded Perez's purchase price upon learning of the pricing error, and that Perez accepted the credit. The trial court also found that MicroCache did not violate the DTPA and that neither it nor Luu was liable to Perez. Based upon these findings, the trial court entered a take-nothing judgment.

## II. *Issues*

Perez challenges the trial court's judgment with six issues. Perez argues that the trial court's judgment is inconsistent with its findings of fact, that the trial court's finding that he was not deceived is based upon legally or factually insufficient evidence, that this finding conflicts with the trial court's other findings, that the trial court's finding that PayPal was acting as MicroCache's agent is based upon legally or factually sufficient evidence, and that the trial court erred by not entering judgment in his favor.

## III. *Discussion*

### A. *Does the Trial Court's Judgment Conform With Its Findings of Fact?*

■ Perez argues that the trial court's take-nothing judgment does not conform with its findings of fact because the court's findings do not negate at least one element of his claim or support every element of at least one affirmative defense and that the findings actually support his DTPA

claims.[2] Perez correctly notes that he was required to prove four elements to establish a DTPA claim: (1) that he was a consumer; (2) that the defendant(s) engaged in at least one of the laundry list items; (3) that he detrimentally relied on the false, misleading, or deceptive act or practice; and (4) that the false, misleading, or deceptive act or practice was a producing cause of his injury. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex.1996).

Perez alleged that MicroCache and Luu committed three laundry list violations:

* representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have;[3]

* advertising goods or services with intent not to sell them as advertised;[4] and

* representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve or which are prohibited by law.[5]

Each of Perez's laundry list claims is based upon the hard drive's advertised price. Perez contends that the advertised price of $1 was a representation that (1) the hard drives had a *characteristic* (a $1 purchase price) and (2) that *an agreement confers or involves rights* (the right to purchase hard drives for $1). Perez argues that, because MicroCache refused to sell him 100 hard drives for $1 each, these representations were false. Perez also argues that he was not required to prove

---

**2.** *See* Tex.R. Civ. P. 299 (when findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense); *see also Pac. Employers Ins. Co. v. Brown*, 86 S.W.3d 353, 357 (Tex.App.-Texarkana 2002, no pet.) (when findings of fact do not support the judgment, the judgment should either be reformed to

conform to the findings or, if appropriate, reversed).

**3.** Section 17.46(b)(5).

**4.** Section 17.46(b)(9).

**5.** Section 17.46(b)(12).

that MicroCache knowingly or intentionally made these misrepresentations and, therefore, that any pricing mistake is immaterial.

The Texas Supreme Court has held that a defendant may be liable for some laundry list violations even if it did not know that the representation was false and it did not intend to deceive. *See Eagle Props., Ltd. v. Scharbauer,* 807 S.W.2d 714, 724 (Tex.1990) (misrepresentations that do not necessarily constitute common-law fraud may be actionable under the DTPA).[6] Knowledge or intent is required only if called for by the language of the implicated laundry list item. *Pennington v. Singleton,* 606 S.W.2d 682, 689 (Tex.1980). However, the court has also held that legislative intent should be determined from the language of the entire act and not isolated portions. *Id.* at 686.

The DTPA contains four laundry list items specifically referring to advertising representations, Section 17.46(b)(9), (10), (17), and (18). Subsections (17) and (18) have limited applicability. Subsection (17) forbids advertising a sale by fraudulently representing that a business is going out of business. Subsection (18) forbids certain advertisements in connection with a prescription drug identification card. Subsections (9) and (10), conversely, are broadly phrased, apply to all advertising, and are generally implicated by price representations.

Subsection (9) prohibits advertising goods or services with intent not to sell them as advertised, and subsection (10) prohibits advertising goods or services with intent not to supply a reasonable

expectable public demand unless the advertisement discloses a limitation of quantity. This type of conduct has been referred to as "bait and switch" advertising. *See Smith v. Baldwin,* 611 S.W.2d 611, 615 (Tex.1980) (describing bait advertising as attracting customers by advertising products at low prices and then switching them to another product at a higher price), and *Transmission Exchange Inc. v. Long,* 821 S.W.2d 265, 270 (Tex.App.-Houston [1st Dist.] 1991, writ denied) (describing the bait and switch technique). Both subsections require proof of intent and, in fact, are the only two laundry list items to use the word "intent."

Because the legislature assigned a higher burden of proof to the two laundry list items based upon general advertising representations and because the legislature worded those two items in a way that typically implicates price representations, we believe that the legislature did not intend to impose strict liability for advertising mistakes such as the one before us. We realize that courts have held that the DTPA imposes a duty on sellers to know if their factual representations are correct. *See, e.g., Lone Star Ford, Inc. v. McGlashan,* 681 S.W.2d 720, 723 (Tex.App.-Houston [1st Dist.] 1984, no writ). The cases that have discussed this principle, however, have involved a direct representation from the defendant to the plaintiff.[7]

■ This does not mean that, merely because a representation is included in some form of advertising, subsections (9) and (10) are the exclusive avenues of relief. Representations beyond price and repre-

---

6. *Eagle Properties* involved allegations of misrepresentations pursuant to Section 17.46(b)(5), (7), and (12). The court held that these laundry list items did not require proof of intent. 807 S.W.2d at 724.

7. *See, e.g., Milt Ferguson Motor Co. v. Zeretzke,* 827 S.W.2d 349, 357 (Tex.App.-San Antonio 1991, no writ); *Wagner v. Morris,* 658 S.W.2d 230, 233 (Tex.App.-Houston [1st Dist.] 1983, no writ); *Ybarra v. Saldana,* 624 S.W.2d 948, 951 (Tex.App.-San Antonio 1981, no writ).

sentations in addition to those in the advertising may violate other laundry list items. Additionally, a particular form or manner of advertising may lead to a different result. However, if the misrepresentation is limited to an item's price and that misrepresentation is made only in a general advertisement, we believe the legislature intended that a claimant prove an intentional misrepresentation to recover under the DTPA.

There was considerable evidence that the $1 price was a mistake. Luu testified that the website was new and that his programmer used a $1 purchase price to test it. The price was then mistakenly left at $1. Perez refused to concede the price was a mistake but did describe it as "a damn good deal." In fact, it was such a good deal that, even though he had only sold ten computers in the last five years, he ordered 100 hard drives when he saw the price. Because Perez was required to prove intent to establish an advertising misrepresentation under the DTPA and because the trial court found that the advertised price was a mistake, its take-nothing judgment is consistent with its findings.

■ Even if we are incorrect in our analysis and Perez was entitled to assert a claim under subsection (5) or (12) without proving intent, the trial court still correctly entered a take-nothing judgment. Perez understandably focuses on the website's initial price posting to define the operative representation.[8] But Perez ignores the fact that the listed prices were not unconditional. The website advised customers that "[p]rices are for reference purposes only and are subject to change without notice. Micro[C]ache is not held responsible for any errors or discrepencies [sic]."

Consequently, Perez was on notice when he ordered 100 Seagate hard drives that MicroCache could refuse to consummate the transaction if there was a pricing error. Because the $1 purchase price was a mistake and because MicroCache refunded Perez's money as soon as it realized the error, the trial court correctly found that Perez was not deceived. That finding is sufficient to establish that MicroCache did not commit a false, misleading, or deceptive act or practice. Perez's first and second issues are overruled.

*B. Did the Trial Court Err by Finding that Perez Was Not Deceived?*

Perez next argues that the trial court's finding that he was not deceived is based upon legally or factually insufficient evidence and that it conflicts with other fact findings. A trial court's factual determinations are reviewed for legal sufficiency under the same standards used to review a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). In considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the prevailing party, indulging every inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 286–87 (Tex.1998). In reviewing a factual sufficiency challenge, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc., a Div. of Phelps, Inc.*, 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ).

■ The evidence is sufficient both legally and factually to support the trial

---

**8.** Perez also argues that the e-mail he received confirming his order was a misrepresentation. If so, that e-mail would not sup-

port a DTPA claim because he had already ordered the hard drives and, therefore, did not detrimentally rely upon it.

court's finding that Perez was not deceived. We have previously found that the $1 purchase price was posted in error and that MicroCache's website notified potential customers that MicroCache had the right to correct a pricing error. This is sufficient to defeat a misrepresentation claim. Moreover, because MicroCache is not strictly liable for the pricing error, this finding is not in conflict with the trial court's other findings. Perez argues that he was indisputably a consumer as defined by the DTPA. We agree. Perez also argues that the trial court's findings that he ordered and paid for the drives establish his reliance and damages.[9] We do not agree, but collectively these are three of four elements that must be proven to establish a DTPA claim. Perez was also required to prove a laundry list violation. We have previously found that Perez was required to prove an intentional misrepresentation, which he did not do, and alternatively that, because the pricing was qualified, MicroCache did not make a misrepresentation. This is sufficient to defeat a DTPA claim regardless of Perez's other proof. Issues three and four are overruled.

In his fifth issue, Perez contends that the trial court erred when it found that MicroCache and Luu were not liable to him. Perez argues that the trial court erred by finding that he was not "deceived" because none of the laundry list items specifically refer to or require proof of a deception. This is correct, but the DTPA requires proof of a "false, misleading, or deceptive act." Section 17.46(a). We have previously held that the trial court's finding that Perez was not deceived is sufficient to establish that the defendants did not commit a laundry list violation. Cf. Eagle Props., 807 S.W.2d at 724 (finding in prior lawsuit that defendant did not misrepresent the bank's financial condition and the OCC's position on the challenged transaction barred a DTPA claim in a subsequent suit on this same basis). Perez's fifth issue is overruled.

Our holdings make it unnecessary to address Perez's sixth issue challenging the trial court's finding that PayPal acted as his agent. TEX.R.APP. P. 47.1.

## IV.  *Holding*

The judgment of the trial court is affirmed.

---

9. Perez's only act of reliance was to order and pay for 100 drives. Perez contends that, even though MicroCache refunded his money as soon as the mistake was identified, he is entitled to receive benefit-of-the-bargain damages totaling $119,500. Perez argues that he was promised 100 drives, but received none, and that, because each drive was worth $1,195, he is entitled to 100 × $1,195.

Section 17.50 allows a consumer to recover economic or mental anguish damages, but any recovery is conditioned upon proof of actual damage. *City of Marshall, Tex. v. Bryant Air Conditioning Co.*, 650 F.2d 724, 726 (5th Cir.1981). The benefit-of-the-bargain damage model compensates a DTPA claimant for the difference between the value as represented and the value actually received. *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex.1984). The only representation Perez relied upon was the $1 purchase price. Thus, even if Perez were otherwise correct, his maximum damages under this theory would be only $100.