

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ROBERT JOSEPH GAUDET, JR., | § | No. 08-23-00075-CV |
| Appellant/Cross-Appellee, | § | Appeal from the |
| v. | § | 243rd Judicial District Court |
| ICON CUSTOM HOME BUILDER, LLC and JUANA GARCIA, | § | of El Paso County, Texas |
| | § | (TC# 2020DCV3607) |
| Appellees/Cross-Appellants. | § | |

## DISSENT

Litigation can teach hard lessons. One lesson is that if you throw everything including the kitchen sink at your adversary—and lose the case—you better be careful with what is in the kitchen sink. Here, what would best be classed as a misrepresentation case, was bootstrapped into DTPA theories that were not legally viable (not even by good faith extension arguments). And in my view, the trial court did not abuse its discretion in concluding that the "representations" were no more than price estimates for building a house where the specifications were in constant flux. The estimates were identified as such, and no reasonable person, particularly a graduate of Stanford Law School (as is the Appellant here), should have seen them as anything different.

Given the problems with the misrepresentation claim, Gaudet contorts the facts to try and fit other DTPA theories. He claims that ICON pulled a "bait and switch" advertisement. Tex. Bus.

& Com. Code Ann. § 17.46(9) ("advertising goods or services with intent not to sell them as advertised"). Subsection (9) is "broadly phrased, appl[ies] to all advertising, and [is] generally implicated by price representations." *Perez v. Hung Kien Luu*, 244 S.W.3d 444, 447 (Tex. App.—Eastland 2007, no pet.). But it still requires an advertisement. And there is a fundamental disconnect between the advertisement that Gaudet identifies ("Custom Builder") and the linchpin of his falsity claim (price of the home). ICON did advertise that it is a "Custom Builder," but it did not advertise the price of any home that it could build for Gaudet. Price negotiations between private parties are not advertisements in any sense of the word. *See Smith v. Baldwin*, 611 S.W.2d 611, 614 (Tex. 1980).

Nor do these facts fit § 17.46(11) ("making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions"). "To violate this subsection, false factual statements must be made about the reasons for, existence of, or the amount of a price reduction." *Washburn v. Sterling McCall Ford*, 521 S.W.3d 871, 875 (Tex. App.—Houston [14th Dist.] 2017, no pet.). This provision "is concerned with price advertising abuse. Most of the abuses in this area deal with conveying the false impression in an effort to promote products and services that the seller is bankrupt, liquidating its inventory, going out of business, or losing its lease." *Id.* (omitting case citations). Yet Gaudet complains about price *increases* and not reductions; nothing about his theory fits the apparent evil this section is intended to address. His argument for an extension of the law boils down to his counsel's view that "[t]he price reductions, it came from the—it sort of was in reverse. The price would go up." That logic, however, would not extend the law—it would be a re-writing of the statute, something courts are not allowed to do. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009), (quoting *Simmons v. Arnim*, 220 S.W. 66, 70 (1920) ("Courts must take statutes as they find them.")).

Gaudet also alleged that ICON misrepresented its agent's authority. *See* § 17.46(b)(14) ("misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction"). The allegation originates with Juana Garcia having provided Gaudet a preliminary estimate for one house model that she revised a week later because she overlooked the cost of a rock wall—an oversight that Garcia claimed her husband discovered. That event does not support a misrepresentation of authority. Nor is there any basis to claim it could be the producing cause of damages. *See Miller v. Keyser*, 90 S.W.3d 712, 716 (Tex. 2002) ("The DTPA requires that the consumer show that the misrepresentation was false and that the false misrepresentation was the producing cause of the consumer's damages."). Gaudet's testimony below was that "[Garcia] was pretending she didn't have the authority to give us the price when I knew she was the owner and she had full authority to give us the price." For her part, Garcia denied that she ever misrepresented her authority, but Gaudet by his own admission claims to have known the truth of the matter. And the only agreement he entered after this initial estimate—the Deposit Agreement—belies that a final price had been reached.[1]

Gaudet also pigeon-holes these facts into a failure to disclose theory. *Id*. §17.46(b)(24) ("failing to disclose information concerning goods or services which was known at the time of the

---

[1] The Deposit Agreement itself states:

> The Deposit will cover only the purchase of preliminary schemes and not the full set of plans. Once the Builder and Buyer have agreed on a scheme with a floor plan and elevation, and a contract for the purchase of a home has been signed, Builder will credit the Deposit towards the contract sales price.
>
> .   .   .
>
> In the event the Builder and Buyer do not agree on a purchase price, the Builder will not refund the Deposit to Buyer.
>
> This document shows only an intent to purchase a property so Builder's representative or Real Estate Agent may start the process of showing inventory to Buyer, in which case the lot hold amount will be zero dollars ($0).

transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed"). Yet the only "transaction" was the $500 deposit agreement, and that agreement disclosed that the final purchase price was yet to be agreed on and would depend on an agreed floor plan and elevation.

The trial court conducted a hearing over three days, taking testimony from Gaudet, his attorney, Garcia, and ICON's counsel. The judge opened the hearing with a correct statement of the DTPA groundless standard and recognized that ICON carried a "tough" burden to establish groundlessness ("And if there's a scintilla of wiggle room to argue in fact or in law that you feel there was a misrepresentation or if you feel that there was, you know, an actionable ground for the DTPA, it survives."). Throughout the hearing, the trial judge expressed her knowledge of the law, the facts, and history of the case. I cannot conclude that she abused her discretion in making any of the detailed findings that she did.[2]

The other lesson here has to do with proportionality. The DTPA claim began with a demand letter seeking return of a $500 deposit, the cost of buying a drone, the cost of a survey, and unspecified mental anguish damages. ICON, without admitting the merits of the allegations, offered to reimburse Gaudet for his claimed actual damages.[3] He declined the offer because it did not address attorney's fees (though he had not hired a lawyer or made a specific monetary demand for fees) and did not offer anything for his and his wife's mental anguish (though she was never a party to the suit). What followed next was Gaudet's 58-page original petition with 78 numbered

---

[2] And for that same reason, I concur in the portion of the majority opinion that overrules ICON's cross appeal faulting the trial court for not finding that the suit was brought in bad faith.

[3] ICON offered Gaudet $2,300 to reimburse the $500 builder's deposit, $600 for the cost of the drone, and $1,200 for the surveyor expenses.

paragraphs.[4] He then filed a notice of lis pendens that attempted to tie up ICON's ability to sell the lot to another buyer. Gaudet tried (unsuccessfully) to defend that filing with his own 102-page declaration. Our clerk's record in this case spans more than 2,000 pages.

The majority does not reach the last issue—a challenge to the $213,072.94 fee award for trial of the case. I confess the amount is more than anyone would expect for a simple consumer dispute. But there is an explanation for that. Newton's Third Law of Mechanics states that for every action, there is an equal and opposite reaction. *See Texas Nat'l Bank v. Sandia Mortg. Corp.*, 872 F.2d 692, 700 (5th Cir. 1989) (citing Newton's third law as explanation for award of attorney's fees against litigant who blocked a reasonable request). Applying that principle here, a litigant cannot make hundred-page filings and expect that the other side will not read (and bill for them).[5] Nor can they assert untested legal theories and expect the other side will not expend resources to contest them. Before the jury, ICON's counsel presented some evidence of the reasonable number of hours worked multiplied by a reasonable hourly rate. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 475 (Tex. 2019). ICON admitted time and billing records which provided some evidence of the services performed, who performed those services, when the services were performed, the time required, and the reasonable hourly rate for the staff doing that work.[6] *See id.* at 498 (setting out required showing for recovery of attorney's fees). ICON's

---

[4] The trial court noted that the writing style of these filings all showed them to have been originally drafted by Mr. Gaudet. His counsel conceded as much, but did review, edit, and approve them before filing.

[5] As ICON's counsel testified to the jury that made findings on the fee award:

> And in every instance in every proceeding, motions for summary judgment, motion to expunge lis pendens, we've had to deal with what I consider excessive briefing and also briefing that's not on point. But we deal with it. And as a result, we've had to spend a lot of time in this case that we otherwise would not have had to spend. I would in fact say that this case is unique in the voluminous nature of the pleadings we've had to deal with.

[6] ICON's attorneys billed between $350 and $400 per hour. Gaudet in his suit was asking for his own fees with an hourly rate of $749 per hour (based on the rate he charges for work in a class action suit).

attorney segregated fees between the DTPA and other claims. Part of the fee includes defense of the prior mandamus to this Court. *In re Gaudet*, 625 S.W.3d 887, 891 (Tex. App.—El Paso 2021, no pet.). The fee, while high by most standards, was supported by the evidence and unique circumstances of this case.

For these reasons, I respectfully dissent.

JEFF ALLEY, Chief Justice

August 28, 2024

Before Alley, C.J., Palafox, J., and Barajas, C.J. (Senior Judge)
Alley, C.J. (dissenting)
Barajas, C.J. (Senior Judge) (Sitting by Assignment)