**David and Lynette MILLER, et al., Petitioners,**

v.

**Barry KEYSER, Respondent.**

No. 01–0541.

Supreme Court of Texas.

Argued on Sept. 4, 2002.

Delivered Nov. 5, 2002.

---

**714**

Philip K. Maxwell, Joe K. Longley, Longley & Maxwell, Austin, Charles M. Kinsey, Pearland, for Petitioners.

Simon H. Hughes, The Hughes Law Firm, Houston, for Respondent.

Justice ENOCH delivered the opinion of the Court.

■ Under the Deceptive Trade Practices Consumer Protection Act ("DTPA"),[1] we are asked whether an agent for a disclosed principal may be held liable for passing along false representations made in the course and scope of his employment. The court of appeals answered that question no.[2] To the contrary, we hold that because the DTPA allows a consumer to bring suit against "any person,"[3] an agent may be held personally liable for the misrepresentations he makes when acting within the scope of his employment. As a result, we reverse the court of appeals' judgment, and remand this cause to the court of appeals for proceedings consistent with this opinion.

## I. Background

Barry Keyser worked as a sales agent for D.B. Interests, Inc., a Texas corporation doing business as The Homemaker. In 1992 and 1993, Keyser sold Homemaker homes built in Oakbrook, a new subdivision located in Pearland, Texas. Keyser showed prospective purchasers the different lots available, as well as how each home would fit on the lots. The lots were subject to a drainage easement held by the Brazoria County Drainage District on the back twenty-feet of each lot. Each purchaser knew about the drainage easement on his or her lot.

---

1. Tex. Bus. & Com.Code §§ 17.41–.63.

2. 47 S.W.3d 728, 734 (opinion on reh'g).

3. Tex. Bus. & Com.Code § 17.50(a)(1).

David and Lynette Miller and several other homeowners (the "homeowners") bought Homemaker homes from Keyser in the Oakbrook subdivision. The homeowners informed Keyser that they were interested in larger backyards, many wanting extra space for their children and pets. Keyser represented to the homeowners that The Homemaker lots were oversized and that they were in fact larger than the lots of a competing builder in the subdivision. Keyser told the homeowners that even with the existence of the easement, the lots could be fenced along the back of the property line. The homeowners paid a premium for these "oversized" lots.

In 1994, after the homeowners built their homes, some received a letter from the Brazoria County Drainage District telling them that all fences in the easement must be removed at the owners' expense. As a result, the homeowners sued the owner of The Homemaker, Dennis Bailey, and sales agent, Barry Keyser, for common-law fraud and misrepresentations in violation of the DTPA. The homeowners claim that Keyser misrepresented the size of the lots and where the fencing could be placed at the back of the lots. The homeowners sought to recover damages for the fence and landscaping repairs and a return of the excess charges paid for the lots.

The homeowners also joined The Homemaker, but all claims against the corporation were dismissed as untimely. At trial, the trial court granted a directed verdict in favor of Dennis Bailey. The trial court found that Bailey had no direct communication with the homeowners, and he therefore made no misrepresentations about the lots. After the jury answered seven questions in favor of the homeowners, the trial court rendered judgment against Keyser.

Keyser appealed, arguing that as a matter of law, under the DTPA, a corporate agent cannot be held personally liable for company misrepresentations. In reversing the trial court's judgment, the court of appeals relied on our decision in *Karl & Kelly Co., Inc. v. McLerran*[4] to support its conclusion that an agent acting within the scope of his employment cannot be held personally liable under the DTPA. The court of appeals reasoned that, in light of the jury findings that Keyser did not act fraudulently and acted only in the scope of his employment, the trial court erred in rendering a judgment against him.[5] We granted the homeowners' petition for review to consider this question.

## II. Agent Liability Under the DTPA

Under the DTPA, a consumer may bring suit against *any person* whose false, misleading, or deceptive acts, or other practices enumerated in the Act are the producing cause of the consumer's harm.[6] A consumer may also bring suit for "any unconscionable action or course of action by *any person*."[7] The DTPA broadly defines "person" as "an individual, partnership, corporation, association, or other group, however organized."[8] The DTPA is a consumer protection statute, and according to the Legislature, is to be construed liberally to promote its central purpose.[9]

---

**4.** 646 S.W.2d 174 (Tex.1983) (per curiam).

**5.** 47 S.W.3d at 734.

**6.** Tex. Bus. & Com.Code § 17.50(a)(1).

**7.** *Id.* § 17.50(a)(3) (emphasis added).

**8.** *Id.* § 17.45(3).

**9.** *Id.* § 17.44(a); *see Eckman v. Centennial Sav. Bank,* 784 S.W.2d 672, 675 (Tex.1990); *Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d 239, 242 (Tex.1985); *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981); *Joseph v. PPG Indus., Inc.,* 674 S.W.2d 862, 865 (Tex.App.-Austin 1984, writ ref'd n.r.e.).

■ Keyser personally participated in the sale of every home sold to the homeowners. He personally made the representations about the size of the lot and the location of the fence. He is the only person with whom the homeowners had any contact. Based on the plain language of the statute, Keyser is liable for his own DTPA violations.

■ Keyser argues that he should not be held liable because he did not, in fact, know that his representations were false. But a DTPA claim does not require that the consumer prove the employee acted knowingly or intentionally.[10] The DTPA requires that the consumer show that the misrepresentation was false and that the false misrepresentation was the producing cause of the consumer's damages.[11] A consumer is not required to prove intent to make a misrepresentation to recover under the DTPA.[12] The DTPA was enacted to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty"[13] and to provide consumers with a means to redress deceptive practices "without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit."[14] Misrepresentations that may not be actionable under common law fraud may be actionable under the DTPA.[15] Thus, Keyser may be held liable under the DTPA even if he did not know that his representations were false or even if he did not intend to deceive anyone.[16]

Keyser further argues that he is not a "person" subject to the DTPA because at all times, he was acting solely on behalf of The Homemaker. He contends that the statute should not be read to allow a consumer to sue any individual person absent a showing that this individual acted outside the scope of his employment or that this individual acted knowingly. For support, Keyser points to our *per curiam* opinion in *Karl & Kelly Co., Inc. v. McLerran.*[17]

The issues in *McLerran* arose in the context of a post-answer default judgment.[18] The defendants, an architect and a real-estate agent involved in the construction of a home, were sued under the DTPA based on their representations about the workmanlike quality of the home.[19] The default judgment happened because the defendants answered but failed to appear at trial. To support the default judgment, the McLerrans had the burden to prove that the defendants were liable.[20] In reversing the court of appeals' judgment, we noted that the McLerrans produced no evidence that the defendants

---

10. *See Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 502 (Tex.2001); *Eagle Props., Ltd. v. Scharbauer,* 807 S.W.2d 714, 724 (Tex. 1990); *Smith v. Baldwin,* 611 S.W.2d 611, 616–17 (Tex.1980).

11. Tex. Bus. & Com.Code § 17.50(a); *see Helena Chem. Co.,* 47 S.W.3d at 502.

12. *Baldwin,* 611 S.W.2d at 616–17.

13. Tex. Bus. & Com Code § 17.44(a); *see Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex.1996).

14. *Baldwin,* 611 S.W.2d at 616; *see Pennington v. Singleton,* 606 S.W.2d 682, 690 (Tex.

1980); *Woods v. Littleton,* 554 S.W.2d 662, 670 (Tex.1977).

15. *Eagle Props., Ltd.,* 807 S.W.2d at 724; *Baldwin,* 611 S.W.2d at 616.

16. *See, e.g., Eagle Props., Ltd.,* 807 S.W.2d at 724; *Pennington,* 606 S.W.2d at 690.

17. 646 S.W.2d at 175.

18. *Id.*

19. *Id.* at 174.

20. *Id.* at 175.

acted in their individual capacities.[21] And we held that agents of a corporation are not liable for the company's misrepresentations unless there is a finding that the agents acted as the alter ego of the corporation.[22]

Ten months after our decision in *McLerran*, this Court decided *Light v. Wilson*.[23] In *Light*, the owner of a construction company was sued individually for unconscionable acts and breaches of implied and express warranties in violation of the DTPA.[24] We declined to hold this corporate agent individually liable because there was no finding that the agent individually violated the DTPA. This conclusion necessarily implied that individual liability could attach if it was found that the agent *personally* violated the DTPA.[25]

■ Justice Spears, in his concurring opinion, asserted that *Light* implicitly overruled the decision in *McLerran*. As stated by Justice Spears, "[l]iability in these cases is based on the agent's own actions, not his status as agent."[26] We agree with this statement. Thus, if there is evidence that the agent personally made misrepresentations, then that agent can be held personally liable.

We recognized our implicit holding in *Light* less than two years later in *Weitzel v. Barnes*.[27] In *Weitzel*, we concluded that when corporate officers make affirmative misrepresentations in connection with the sale of a home, the agents are personally liable under the DTPA even though they were acting on behalf of the corporation.[28] Liability attaches because the officers *themselves* made the misrepresentations.

■ Our holdings in *Light* and *Weitzel* comport with Texas' longstanding rule that a corporate agent is personally liable for his own fraudulent or tortious acts.[29] The plain language of the DTPA is in harmony with this rule.

Here, the jury expressly found that Keyser personally violated the DTPA and that his false, misleading, and deceptive actions were the producing cause of the homeowners' harm. The evidence supports that finding. Keyser showed the homeowners the plats of land, he showed them the size of the lots, he told them where their fences could be located, and he was paid $40,000 in commission as a result of his sales. The plain language of the DTPA grants the homeowners a cause of action against "any person" who violates the Act. Even though the jury found that Keyser acted "solely within the course and scope of his employment . . . as an agent for [T]he Homemaker," this finding does not excuse Keyser from DTPA liability.

Our analysis on agent liability is not affected by the agent's or the employee's position in the company. The court of appeals distinguished *Weitzel* from this case based on the fact that the corporate agents were officers of the corporation.[30] But the definition of "person" under the DTPA makes no such distinction, and no

21. *Id.*

22. *Id.*

23. 663 S.W.2d 813 (Tex.1983).

24. *Id.* at 814.

25. *Id.* at 815 (Spears, J., concurring).

26. *Id.*

27. 691 S.W.2d 598 (Tex.1985).

28. *Id.* at 601.

29. *See Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex.1984); *Light,* 663 S.W.2d at 815 (Spears, J., concurring); *see also* RESTATEMENT (SECOND) OF AGENCY § 348 (1958).

30. 47 S.W.3d at 730–31.

other provision implies that one's status in the corporation determines liability. Agents are personally liable for their own torts. There is no basis for concluding differently based on the claims brought under the DTPA.[31] Accordingly, we hold that an agent may be held personally liable for his own violations of the DTPA.

■■■ Keyser points to the language of the DTPA indemnity provision to purportedly advance his theory that an agent acting for a corporation cannot be held individually liable.[32] Section 17.555 states: "[a] person against whom an action has been brought under this subchapter may seek contribution or indemnity from one who, under the statute law or at common law, may have liability for the damaging event of which the consumer complains."[33] Keyser says that because Section 17.555 includes the common law, the DTPA recognizes the common law doctrine of *respondeat superior*. Thus, if the agent or employee is acting on behalf of the corporation and in the scope of his employment, the corporation alone is the responsible party. The agent is only liable under the DTPA when he acts knowingly or outside the scope of his employment.

We think this indemnification provision supports a contrary inference. The statute actually contemplates that an agent may be innocent of any knowing misrepresentation by merely passing along information of the company. The language of Section 17.555 does not excuse an agent from being a party to a suit. Rather, the indemnification provision provides a means for an agent to recoup his loss from the employer if the employer is responsible for the consumer's harm. The DTPA permits "consumers to seek DTPA recourse against those with whom they have engaged in a consumer transaction."[34] Then, if another causes the agent's liability, the agent may seek statutory contribution or indemnity against that entity. Here, The Homemaker is an entity that may have liability for the homeowners' harm. If Keyser was truly just passing along company information, then he has a right to seek indemnity against The Homemaker. Even though the DTPA subjects an agent or employee acting within the scope of employment to DTPA liability, the DTPA also offers protection. Agents and employees receive protection through the indemnification provision.[35]

■■■ Finally, the DTPA identifies a wide range of persons who may be sued, but also identifies an exemption in Section 17.49.[36] Section 17.49(a) exempts from DTPA liability "the owner or employees" of certain advertising media.[37] But a media employee may still be sued if the employee acts with "knowledge of the false, deceptive, or misleading acts or practices ..." or has a "substantial financial interest in the sale or distribution of the unlawfully advertised good or service."[38] The homeowners argue, and we agree, that the exemption of Section 17.49 only excuses from DTPA liability advertising media employees.

---

**31.** *Light,* 663 S.W.2d at 815 (Spears, J., concurring).

**32.** *See* TEX. BUS. & COM.CODE § 17.555.

**33.** *Id.*

**34.** *Amstadt,* 919 S.W.2d at 652; *see* TEX. BUS. & COM.CODE § 17.555.

**35.** *See* TEX. BUS. & COM.CODE § 17.555.

**36.** *See Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 706 (Tex.1983); *Cameron,* 618 S.W.2d at 540.

**37.** TEX. BUS. & COM.CODE § 17.49(a).

**38.** *Id.*

Further, Section 17.49 demonstrates that the Legislature knew how to exempt employees from liability for innocent misrepresentations. And it chose to only exempt media employees. If all employees of any enterprise were meant to be excluded from the DTPA because they were acting on behalf of their employers, then Section 17.49 would be unnecessary. As we stated in *Cameron v. Terrell & Garrett, Inc.,*

> if the [L]egislature had intended to place such a restriction on the class of persons who could be sued under the Act for deceptive trade practices, it could easily have done so by simply drafting the restriction into the definition of *consumer* or some other provision of the Act.[39]

The Legislature did not do so, and we presume the Legislature did not perform a needless act by enacting Section 17.49.[40] The Legislature created a limited exemption for advertising media employees, and it drafted the statute to allow a consumer to bring suit against "any person" who causes the consumer's harm. Thus, as the statute is written, "any person" who makes a representation is liable under the Act if that representation is false, misleading, or deceptive. Any other reading of the DTPA renders Section 17.49's language useless.

The court of appeals states that, even if one interprets the statute to excuse from DTPA liability those employees acting innocently on behalf of their employers, Section 17.49 still serves a purpose.[41] Section 17.49 "protects media employees (and their employers) from liability based on another's false advertising."[42] But the court of appeals expands the limited exemption in Section 17.49 beyond its own terms. It ignores the plain language of the DTPA to create an additional exemption for employees who pass along company information. The court of appeals interpreted the "any person" language of the DTPA to excuse all employees or agents for their innocent misrepresentations made while on the job, and it distinguished between employees who act on their own and employees who act on behalf of their employers.[43] Under this interpretation, no express employee exemption provision would be required, and as a result, the language of Section 17.49 would be superfluous.

The purpose of the DTPA is not only to deter the conduct the DTPA forbids but also to provide consumers with an efficient means to redress deceptive business practices.[44] Creating an exemption for corporate agents and employees would do little to further that purpose.

■ In the event an employee is held liable for unknowingly passing along false company information, that employee can seek statutory contribution or indemnification from the employer. The provision works to ensure that the responsible party is the one that actually pays, even if that party is not the one actually sued. If the indemnification proves to be not enough protection for agents, the Legislature can amend the statute to prevent further mischief. We decline to judicially create an exemption that does not exist in the statute for agents acting solely on behalf of

---

**39.** 618 S.W.2d at 540 (emphasis in original).

**40.** *See Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 551 (Tex.1981); *Cameron,* 618 S.W.2d at 540.

**41.** 47 S.W.3d at 733.

**42.** *Id.*

**43.** *Id.* at 733–34.

**44.** Tex. Bus. & Com.Code § 17.44(a); *see Amstadt,* 919 S.W.2d at 649; *Baldwin,* 611 S.W.2d at 616; *Pennington,* 606 S.W.2d at 690; *Woods,* 554 S.W.2d at 670.

their employers. In doing so, we also acknowledge the amicus brief received from the Attorney General, in which the General asserts that judicially creating such an exemption would adversely affect the General's ability to enforce the statute, which ultimately will affect the protections afforded to consumers.[45]

### III. Conclusion

Keyser is a "person" under the language of the DTPA. Because the plain language of the DTPA provides for agent liability when that agent personally violates the DTPA, we reverse the judgment of the court of appeals. Keyser raised additional issues in the court of appeals that were not presented to this Court. Pursuant to Rule 53.4 of the Texas Rules of Appellate Procedure, we remand this case to the court of appeals for further proceedings.

Justice SCHNEIDER did not participate in the decision.

---

**45.** *See* Tex. Bus. & Com.Code § 17.47(a).