NUMBER 13-03-00429-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG






CAROL J. DRAKE, CARLENE K.

VINYARD, JANET FAY DAY, AND

CHERYL A. KURTZ, Appellants,


v.



LUCILLE SPRIGGS, ET AL., Appellees.





On appeal from the 343rd District Court


of Aransas County, Texas.






CONCURRING AND DISSENTING MEMORANDUM OPINION


Before Justices Hinojosa, Yañez, and Castillo


Concurring and Dissenting Memorandum 

Opinion by Justice Castillo


 I join the majority opinion except as to its conclusion that the trial court erred
in granting the no-evidence motion for summary judgment on appellants' Deceptive
Trade Practices Act ("DTPA") claims. Because I would affirm the trial court's ruling
on this issue, I respectfully dissent.

 Appellants alleged in the First Amended Petition that unlawful acts and practices
were the producing cause(s) of damages to Cheryl A. Kurtz, wife of the deceased, Carl
J. Kurtz ("Kurtz"). Kurtz paid $50,000 to Valdez and Spriggs, d/b/a Lulu's Bail Bonds,
for a bail bond, and another $50,000 to Zambrano d/b/a AA Pepe's Bail Bonds, in
order to secure his release from jail in Aransas County, Texas. (1) Kurtz had been
arrested on warrants issuing from Montrose County, Colorado, for conspiracy to
commit murder and criminal solicitation to commit murder. 

 By their lawsuit, appellants, as Kurtz's heirs, complained that the sureties were
not approved to make bonds or render bonding services in Montrose County, Colorado,
and that Kurtz was subsequently required to post another bond from a Colorado
bondsman. Appellants alleged violations of the DTPA, complaining that appellees
misrepresented the validity of bonds and the extent to which the bonds would secure
Kurtz's release. Specifically, appellants charged that appellees had "failed to disclose"
to Kurtz that "they were not approved to write bail bonds in Colorado," that the bonds
would need to be replaced upon his appearance in the Colorado court, and that they
would be relieved from any liability once he appeared at the advisement hearing in
Colorado. It is undisputed that Kurtz was released from Aransas County officials'
custody upon tender of the bonds. Appellants contended Kurtz sustained pecuniary
economic loss in the amount of $100,000, the monies paid for the "worthless and
'bogus'" bail bonds.

 In their no-evidence motion for summary judgment, appellees contended there
was no evidence that any allegations, even if true, including that appellees made any
false statements or were not approved to write bail bonds in the state of Colorado,
were a producing cause of any damages. The trial court's order finding no evidence
as to "'producing cause' under the DTPA on any action alleged to have been
committed by the Defendants" and granting the no-evidence motion for summary
judgment as to all DTPA claims was entered November 13, 2002. 

 Appellants contend, and the majority agrees, that they tendered more than a
scintilla of evidence to support the producing cause element of the DTPA claims. 
Specifically, the majority concludes that deposition testimony of Judge Brown, the
Colorado judge, in which he stated that Colorado did not recognize the Texas bonds
as having legal significance, constituted some evidence that a misrepresentation of the
bond's validity in Colorado was a producing cause of damages. (2) I disagree. Judge
Brown's statement is nothing more than a recognition that Colorado does not
recognize Texas bonds. It serves as no evidence of a producing cause of damages. 

 Kurtz fled from Colorado where warrants against him had issued related to
murder charges. He was detained and jailed in Aransas County, Texas, on September
28, 1999. He was arraigned by an Aransas County judge who set bail. Kurtz
obtained two bonds to secure his release from the Aransas County authority, and he
was released on the condition that he appear for a hearing in Montrose County,
Colorado. He was subsequently escorted to that advisement hearing by a
representative of one of the sureties; that hearing took place November 1, 1999. 
Between the date of posting of the bonds and his appearance at the hearing, Kurtz
was free on bond, just as promised by the Aransas County court and the sureties. (3) 
Appellants complain that Kurtz was subsequently required to obtain an additional bond,
thereby sustaining damages because the Texas bonds were inoperative in Colorado. 
However, regardless of whether any misrepresentations were made to Kurtz, the
summary judgment evidence establishes the Colorado court would have required bond
be posted by a Colorado surety.

 Under the DTPA, a consumer may bring suit against any person whose false,
misleading, or deceptive acts, or other practices enumerated in the act are the
producing cause of the consumer's harm. Miller v. Keyser, 90 S.W.3d 712, 715 (Tex.
2002). As noted by the majority, producing cause requires proof of actual causation
in fact. Prudential Ins. Co. of Am. v. Jefferson Assocs., 896 S.W.2d 156, 161 (Tex.
1995). "This requires proof that an act or omission was a substantial factor in
bringing about injury which would not otherwise have occurred." Id. "The first
component of producing-cause analysis is a purely fact-based examination, considering
whether, but for the defendant's conduct, the plaintiff's injuries would not have
occurred." Amstadt v. United States Brass Corp., 919 S.W.2d 644, 655 (Tex. 1996)
(Gonzales, J., concurring in pat and dissenting in part). Cause in fact is not shown if
the defendant's negligence did no more than furnish a condition which made the injury
possible. Doe v. Boys Clubs, 907 S.W.2d 472, 477 (Tex. 1995). 

 Appellants were required to tender more than a scintilla of evidence that, but
for appellees' conduct, Kurtz sustained injuries which otherwise would not have
occurred. In this instance, that means that, but for the alleged misrepresentations of
appellees, Kurtz would not have secured the bonds which subsequently had to be
replaced by Colorado bonds. The record should therefore reflect some evidence that
either (a) Kurtz would have elected to remain in jail pending being transferred to
Colorado through extradition procedures, or (b) he would have sought Colorado bonds
beginning with the initiation of his arrest, bypassing any Texas bonding companies. (4) 
As noted above, it is undisputed that the Texas bonds were effective to secure Kurtz's
release on bond from Texas custody. 

 In their response to the no-evidence motion for summary judgment, appellants
tendered as evidence of "producing cause" the following: (1) deposition testimony of
Joe Zambrano that he knew the bond, when issued, related to a warrant from
Colorado, that he did not know the bond would not be recognized in Colorado, that he
worked with Spriggs of Lulu's Bail Bonds to get the second bond issued in Kurtz's
behalf, that he posted virtually all of his collateral to cover Kurtz, and that he
accompanied him to Colorado because if Kurtz hadn't appeared before the Colorado
court, Zambrano would have lost everything he had; (2) deposition testimony of Jesse
Valdez who, as an agent of Spriggs and Lulu's Bail Bonds, executed that bond,
understood it was returnable to Montrose County, Colorado, and knew that Zambrano
would accompany Kurtz to the Colorado court; (3) testimony of Lucille Spriggs that her
company provided a bond for Kurtz, she knew Zambrano was also providing a bond,
that the bonds were returnable to Colorado, and that it was important to present Kurtz
to the Colorado court; (4) testimony of Olivia Zambrano; and (5) testimony of Judge
Brown, District Judge in Montrose County, Colorado, that bond posted by Kurtz had
to be approved by the court, posted by a company subject to the court's jurisdiction,
and licensed to do business in Colorado, that the two Texas bonds did not meet those
requirements, and therefore, that when Kurtz did appear in his court, a replacement
bond was required. 

 None of these foregoing facts are disputed. None of these facts address
whether or not Kurtz would have opted to secure the bonds and his release from the
Texas jail had he known an additional bond would be required once he appeared before
the Colorado court. I find no evidence that, but for the alleged misrepresentation,
Kurtz would have acted differently. Appellants argue that we should presume such
harm simply because the Texas bonds were inadequate to secure Kurtz's release
pending resolution of the entire matter in Colorado. (5) However, we may not presume
or speculate as to evidence of harm, and, as such, I cannot conclude that the trial
court erred in finding no evidence that any alleged DTPA violation was a producing
cause of damages to Kurtz or his heirs. Accordingly, I respectfully dissent. 


 ERRLINDA CASTILLO

 Justice



Concurring and Dissenting Memorandum Opinion 

delivered and filed

this 14th day of December, 2006.

 

1. Evidence reflects that Kurtz, although subject to Aransas County authorities, was at least for
some portion of the relevant time hospitalized instead of housed in the jail. 
2. Appellants also contended that appellees made perjured statements regarding their net worth
on the face of the bonds. I agree with the majority that any misrepresentation of financial net worth,
if made, was not a producing cause of any damages and cannot be relied upon to support the DTPA
claims. 
3. Kurtz's appearance before the Colorado court was interpreted as voluntary and a waiver of
extradition procedures. 
4. The question as to whether Colorado bonding companies would be recognized by Texas
authorities is not before this Court. 
5. The majority cites to no Texas law, and I find none, to support its contention that where a
misrepresentation is alleged to have been material, courts should "presume" that the "but for" prong has
been satisfied, absent evidence to the contrary. Such an approach constitutes an improper shifting of
the burden of proof.