Affirmed and Memorandum Opinion filed January 22, 2008








Affirmed
and Memorandum Opinion filed January 22, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00483-CV

____________

 

GEORGE K. SHEFFIELD AND CREED
CORPORATION,
Appellants

 

V.

 

JOHN GIBSON, Appellee

 



 

On Appeal from the 190th
District Court

Harris County, Texas

Trial Court Cause No. 2002-26522

 



 

M E M O R A N D U M   O P I N I O N

Appellant George Sheffield, officer and owner of Creed
Corporation (ACreed@),  and appellee, John Gibson, negotiated
the purchase of a home in Beach City from Creed.  After Gibson bought the home,
he filed this suit against Sheffield, Creed, and others, alleging, among other
things, common-law fraud, statutory real estate fraud, and DTPA violations
based on alleged misrepresentations regarding the home=s foundation. 
After a bench trial, the trial court found in favor of Gibson and awarded him
damages.  Sheffield and Creed brought this appeal.








Factual
and Procedural Background

Gibson is a CPA who has lived in the Houston area since
1965.  In April of 2000, Gibson informed one of his clients, Linda Miller, who
was a real estate broker, that he was looking to purchase a house in Beach
City.  Miller knew that Sheffield had a house in Beach City that he wanted to
sell, so she contacted Sheffield for Gibson, and Sheffield made the key to the
home available so Gibson could go look at the property.

Gibson decided to purchase the home, and on May 26, 2000,
the earnest money contract was signed. The earnest money contractCa standard ATexas Real Estate
Commission One To Four Family Residential Contract@Ccontained a
provision dealing with acceptance of the property condition.  The contract
provided that in exchange for $100, Gibson would have ten days after the
effective date of the contract to give notice of termination of the contract. 
If Gibson did not give notice in the time allowed, he would be deemed to have
accepted the property in its Acurrent condition.@

After signing the earnest money contract, but before
closing, Gibson discovered a crack in the foundation of the home, and informed
Sheffield that he would not close with the foundation of the home in such a
condition.  Sheffield informed Gibson that he had already consulted a
foundation repair company to look at the problem, and that he was considering
having the foundation repaired.  Rather than terminate the contract, as Gibson
had a right to do under the property acceptance provision of the earnest money
contract, Sheffield and Gibson orally agreed that, instead, Sheffield would pay
to have the foundation fully repaired by Continental Foundation Repair (AContinental@) after closing. 
Relying on this modification, Gibson closed on the house on June 22, 2000.








Sheffield testified at trial that he paid Continental
$4,150 for the necessary foundation repairs in the form of forgiveness of debt
owed to Sheffield.  However, the repair work was never performed, and as a
result, Gibson sued Sheffield, Creed, Continental, Ogden, and Tesha Ann
McClanahan, apparent wife and co-owner of Continental.[1] 
His pleadings claimed breach of contract, fraud,[2]
conspiracy, and Deceptive Trade Practices-Consumer Protection Act (ADTPA@) violations. 
Sheffield and Creed filed a cross-claim against James Ogden, individually, and
d/b/a Continental Foundation Repair, seeking (1) in-kind contribution for any
liability Sheffield and Creed might owe to Gibson; (2) the determination of
proportionate responsibility as to the various defendants, and particularly
amongst themselves, Ogden and Continental; and (3) actual damages for breach of
contract.  With respect to their breach of contract claim, Sheffield and Creed
alleged that they had contracted with Ogden and Continental to perform
foundation repairs on Gibson=s residence, and that Ogden and
Continental failed to perform after receiving Aadequate
remuneration.@  Sheffield and Creed therefore sought to recover the
greater of $4,150 or the contribution amount, plus attorney=s fees, from Ogden
and Continental.








Ogden and Continental failed to appear at trial, and
Gibson, Sheffield and Creed tried the case to the bench.  In support of their
defense and their cross-claim, Sheffield and Creed presented, among other
things, a letter from Ogden, on behalf of Continental, to Gibson, informing him
that Sheffield had Apaid the amount of $4150.00 to complete
the work@ at Gibson=s home.  Sheffield
testified that this payment was in the form of forgiveness of debt owed to him
by Ogden and Continental.  The trial court found in favor of Gibson, and
awarded him actual damages, exemplary damages, attorney=s fees, pre- and
post-judgment interest, and costs from all defendants, jointly and severally. 
The trial court further found in favor of Sheffield and Creed on their
cross-claim, and awarded them actual damages, attorney=s fees, and pre-
and post-judgment interest from Ogden and Continental, jointly and severally. 
The trial court did not file any findings of fact and conclusions of law.  This
appeal followed.

Analysis
of Sheffield=s and Creed=s Issues

On appeal, Sheffield and Creed raise four issues: 1)
whether the agreement to pay for the foundation repair was barred by the
statute of frauds or the parol evidence rule; 2) whether the court erred in
holding Sheffield individually liable; 3) whether the court erred in awarding
exemplary damages; and 4) whether reversal is required because the trial court
waited eleven months to issue a final judgment.

I.        Consideration
of agreement not barred by the statute of frauds or the parol evidence rule.

Whether the statute of frauds applies is a question of law,
which we review de novo.  See Bratcher v. Dozier, 162 Tex. 319,
346 S.W.2d 795, 796 (1961).  Since the parol evidence rule is a rule of
substantive law, its application also is reviewed de novo. Baroid Equip.,
Inc. v. Odeco Drilling, Inc., 184 S.W.3d 1, 13 (Tex. App.CHouston [1st
Dist.] 2005, pet. denied). 

A.      Assuming
the statute of frauds applies, an exception allowed the trial court to consider
the agreement.








The statute of frauds requires that certain types of
promises or agreements, or  memorandums of those promises or agreements, be in
writing and signed by the party to be charged. See Tex. Bus. & Com. Code ' 26.01.  However,
this is not to say that subsequent oral modifications of contracts required by
the statute of frauds to be in writing must themselves be in writing. See
Garcia v. Karam, 276 S.W.2d 255, 257 (Tex. 1955).  If neither the
portion of the written contract affected by the subsequent modification nor the
matter encompassed by the modification itself is required by the statute of
frauds to be in writing, then courts will allow oral modification of a contract
required by the statute of frauds to be in writing. See id.

The parties correctly state that the statute of frauds
applies to contracts for the sale of real estate. See Tex. Bus. & Com. Code ' 26.01(b)(4). 
Sheffield and Creed contend that subsequent oral modifications to a contract
for the sale of real estate are barred by the statute of frauds when that
contract covers the entire agreement between the parties.  However, we find
that our resolution of the present appeal does not require us to address this
issue.  Even assuming the statute of frauds would apply to bar evidence of  the
oral modification of the sales agreement, an exception precludes its operation
in this case.  When one party fully performs a contract, the statute of frauds
may be unavailable to the second party if he knowingly accepts the benefits and
partly performs. Callahan v. Walsh, 49 S.W.2d 945, 948 (Tex. Civ. App.CSan Antonio 1932,
writ ref'd) (citing Texas Co. v. Burkett, 117 Tex. 16, 296 S.W. 273, 278
(1927); Matthewson v. Fluhman, 41 S.W.2d 204, 206 (Tex. Comm=n App. 1931)); see
also Estate of Kaiser v. Gifford, 692 S.W.2d 525, 526 (Tex. App.CHouston [1st
Dist.] 1985, writ ref=d n.r.e.); Carmack v. Beltway
Development Co., 701 S.W.2d 37 (Tex. App.CDallas 1985, no
writ); Le Sage v. Dunaway, 195 S.W.2d 729, 731 (Tex. Civ. App.CWaco 1946, no
writ).  The second party=s effectual repudiation of the contract
and refusal to complete performance thereunder would amount to a fraud, which
the courts will not sanction.  Callahan, 49 S.W. at 948.

There is sufficient evidence from which the trial court
could have found that Gibson fully performed his end of the agreement by
closing before any of the repair work had been completed, and that Sheffield
and Creed accepted that benefit and partially performed by tendering the
forgiveness of debt in the amount of $4,150 in order to have foundation work
performed.  However, it is undisputed that Sheffield and Creed never fully performed
their end of the bargain, i.e., paid to have the foundation fully repaired by
Continental.  Therefore, it would be a fraud to allow Sheffield and Creed to
raise the statute of frauds as a defense now.








          B.      The
parol evidence rule does not bar evidence of modification.

Sheffield and Creed also argue that the parol evidence rule
bars evidence of the oral modification.  However, A[t]he parol
evidence rule excludes only prior and contemporaneous negotiations.  It does
not apply to subsequent agreements entered into by the parties.@ Garcia,
276 S.W.2d at 258; see also Mortgage Co. of Am. v. McCord, 466 S.W.2d
868, 871 (Tex. Civ. App.CHouston [14th Dist.] 1971, writ ref=d n.r.e.) (AExtrinsic evidence
may always be offered to show a new agreement or that an existing written
contract has been changed, waived, or abrogated in whole or in part.@).  

The agreement to repair the foundation was made after the
original earnest money contract was signed, during the period before closing. 
The modification was therefore subsequent to the written agreement, and is not
barred by the parol evidence rule.

Thus, we hold that the court did not err under either the
statute of frauds or the parol evidence rule in considering the oral
modification.  We therefore overrule Sheffield=s and Creed=s first issue.

II.       No error
in holding Sheffield individually liable.

In their second issue, Sheffield and Creed argue that the
trial court erred in holding Sheffield individually liable, because there was
no evidence to support a finding of Aactual fraud@ necessary to
pierce the corporate veil.  They argue that because the trial court Afound@ that Sheffield
and Creed should be reimbursed for the money paid to Continental for the
foundation repair, a finding that payment was actually made is implied, and
there can be no finding of fraud on the part of Sheffield.  We disagree.








Although Sheffield and Creed argue repeatedly that the
trial court found that they were entitled to reimbursement for the $4,150
forgiveness of debt that was made to Ogden and Continental, the trial court
made no findings of fact or conclusions of law.  However, the trial court did
award Sheffield and Creed actual damages in the amount of $4,150, attorney=s fees, and pre-
and post-judgment interest against Ogden and Continental.  Our examination of
the record leads us to conclude that there is sufficient evidence to support an
implied finding by the trial court that Sheffield and Creed tendered
forgiveness of the $4,150 debt owed to them as payment for the foundation
repair work to be done by Continental.  With this in mind, we now turn to our
analysis of this issue.

Contrary to Sheffield=s and Creed=s arguments,
piercing the corporate veil is not the only theory under which Sheffield could
be held individually liable.  In Texas, agents are personally liable for their
own torts. Miller v. Keyser, 90 S.W.3d 712, 718 (Tex. 2002); see also
Holberg v. Teal Constr. Co., 879 S.W.2d 358, 360 (Tex. App.CHouston [14th
Dist.] 1994, no writ) (AIt has long been the rule in Texas that
corporate agents are individually liable for fraudulent or tortious acts
committed while in the service of their corporation.@).  Therefore,
Sheffield can be held liable in his individual capacity without corporate veil
piercing if he is personally liable for any fraudulent or tortious actsCeven those
committed while acting for Creed. See Holberg, 879 S.W.2d at 359B60.

Gibson=s pleadings support causes of action for
common-law and statutory real estate fraud against Sheffield in his individual
capacity.  A cause of action for common-law fraud requires (1) a material
misrepresentation; (2) which was false; and (3) which was either known to be
false when made or was asserted without knowledge of its truth; (4) which was
intended to be acted upon; (5) which was relied upon; and (6) which caused
injury.  Formosa Plastics Corp. USA v. Presidio Eng=rs &
Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998).  Similarly, under the
Business and Commerce Code, a cause of action for statutory real estate fraud
requires a false promise to do an act, when the false promise is (1) material;
(2) made with the intention of not fulfilling it; (3) made to a person for the
purpose of inducing that person to enter into a contract; and (4) relied on by
that person in entering into the contract. Tex.
Bus. & Com. Code _ 27.01(a)(2).








Here, every element of Gibson=s fraud causes of
action is met.  First, there was evidence that Sheffield represented that he
would pay to have the foundation fully repaired, when, in fact, he only
intended to pay for the cheaper, inadequate $4,150 repair.  Ogden=s deposition
testimony indicates that before Sheffield entered into the modification
agreement, Ogden had completed two proposals for foundation repairs on the
Beach City homeCone involving 25 exterior piers and 12
interior piers to support the home=s foundation, and
the second, involving only 20 exterior piers.  Ogden=s deposition
testimony further indicates that Sheffield opted for the second, less-expensive
proposal, as he was interested in doing the job Aas cheaply as
possible.@

Second, evidence in the record shows that before he entered
into the modification agreement,  Sheffield knew this second proposal would not
fully repair the foundation of the home.  Ogden=s deposition
testimony reveals that first proposal constituted the appropriate way to repair
the problems with the foundation of the home, that he recommended only the
first proposal to Sheffield, that he did not recommend the second proposal.  In
fact, Ogden testified that attempting foundation repairs on the home without
the inclusion of interior piers would actually result in the foundation
problems worsening over time.  Ogden=s deposition
testimony further suggests that Sheffield knew about both proposals before the
agreement was modified, and that he chose the second approach simply because it
was the cheaper one.

Finally, the record demonstrates that Gibson relied on
Sheffield=s representation when he purchased the home, and this
representation damaged Gibson by causing him to purchase a home with foundation
problems that will cost, by one estimate, $13,813 to repair.  At trial, Gibson
testified that he relied upon Sheffield to pay to have the foundation fully
repaired by Continental, and that he would not have purchased the home had
Sheffield not made this representation.  Therefore, Gibson sufficiently alleged
and proved causes of action for common-law and statutory real estate fraud
against Sheffield in his individual capacity.  See Formosa, 960 S.W.2d
at 47; Tex. Bus. & Com. Code _ 27.01(a)(2). 
Thus, the trial court did not err in holding Sheffield individually liable.








Moreover, Gibson also asserted claims for DTPA violations
for which Sheffield could be held individually liable. See Miller, 90
S.W.3d at 715B16.  While it is true that Sheffield  could be held
individually liable under the DTPA even if he did not know that his
representations were false or if he did not intend to deceive Gibson, to
support the award of exemplary damages under the DTPA, Gibson was required to
prove that Sheffield  Aknowingly@ violated the
statute. See id.; Tex. Bus. &
Com. Code _ 17.50(b)(1).  The same evidence in support of Gibson=s fraud claims
also supports the award of exemplary damages under the DTPA.

 We therefore overrule Sheffield=s and Creed=s second issue.

III.      No error
in awarding exemplary damages.

In their third issue, Sheffield and Creed argue that the
trial court Afound@ that Creed and Sheffield paid Continental
$4,150 to repair the foundation, and therefore there can be no finding against
them of intentional fraud or a knowing DTPA violation justifying the award of
exemplary damages because there could have been no intentional act or knowing
violation given that the court also awarded damages to Sheffield and Creed from
Continental, and that this case is merely a breach of contract action.  Stated
another way, Sheffield and Creed argue that the award of damages to them
against Continental shows that the court decided the case as a breach of
contract, rather than a tort case, and therefore exemplary damages are
unavailable.  This argument is similar to the one made in the second issue, and
similarly lacks merit.








The award of damages to Sheffield and Creed from
Continental does not preclude a finding of fraud.  See Tex. Civ. Prac. & Rem. Code ' 41.003(a). 
Sheffield=s and Creed=s argument
presupposes that the only viable fraud claim would be one claiming that it was
fraudulent for Sheffield and Creed to fail to have the foundation fully
repaired.  However, this is not true.  As discussed above, the trial court did
not find that Sheffield or Creed paid $4,150 to Continental to repair the
foundation.  Rather, there is sufficient evidence to support an implied finding
by the trial court that Sheffield and Creed tendered forgiveness of debt owed
to Sheffield in the amount of $4,150 as payment for the foundation repair, and
that Sheffield still committed fraud by representing that he would pay to have
the foundation fully repaired, when he intended all along to pay only for an
inadequate repair.  In no way does the award of the $4,150 suggest that the
trial court did not find that fraud was committed.  When there are no findings
of fact and conclusions of law filed by the trial court, we imply all findings
supported by the evidence that support the trial court=s judgment, and we
do not imply findings contrary to the trial court=s judgment. See
Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992).

Sheffield and Creed cite two cases to support their
position.  They cite Dubow v. Dragon, 746 S.W.2d 857 (Tex. App.CDallas 1988, no
writ), for the proposition that when a buyer discovers a property condition
before closing, and accepts the property Aas is,@ he cannot claim
reliance upon the seller=s misrepresentations regarding the
condition of the property in support of a DTPA cause of action. However,
because we find that the trial court could have based its award of exemplary
damages on either common-law or statutory real estate fraud, we need not
consider whether this case would avail Sheffield and Creed if the court relied
on violations of the DTPA for its decision.

Sheffield and Creed also cite Formosa for the proposition
that tort damages and DTPA claims based on the failure to perform the stated
terms of a contract are not valid in Texas.  While it is true that a pure
breach of contract cannot be pleaded as a fraud just to obtain more favorable
treatment under the law, Formosa makes clear that fraudulent inducement
claims allow the recovery of tort damages, irrespective of whether the
fraudulent representations are later subsumed in a contract or whether the
plaintiff only suffers an economic loss related to the subject matter of the
contract. Formosa, 960 S.W.2d at 47.  Therefore, Formosa,
contrary to Sheffield and Creed=s purposes, actually makes clear that a
fraud in the inducement claim is valid under the facts in this case. See id.

Because the return of money to Sheffield and Creed did not
preclude a finding of fraud, we hold that a cause of action existed on which
the trial court could predicate the award of exemplary damages.  We therefore
overrule Sheffield and Creed=s third issue.








IV.      No error
in waiting eleven months to issue final judgment.

In their final issue, Sheffield and Creed complain that the
trial court reversibly erred in waiting eleven months to issue its final
judgment.  They complain that the Amended Judgment contained multiple errors,
although they do not identify these alleged errors.  Without citing any
authority, Sheffield and Creed argue that public policy should dictate that
eleven months is too long to wait between a bench trial and a final judgment. 
In addition, they have not shown that they preserved error, what errors were
committed, or how they were harmed by the delay.  See Tex. R. App. P. 38.1(h) (requiring
appropriate citations to authority to accompany argument).  We therefore
overrule Sheffield=s and Creed=s final issue.

Conclusion

Having overruled each of Sheffield=s and Creed=s issues, we
affirm the judgment of the trial court.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed January 22, 2008.

Panel consists of
Justices Anderson, Fowler, and Frost.

 









[1]  Service was never accomplished on McClanahan, and
Ogden indicated that she was in prison at  the time of trial.  At any rate, the
claims against her were nonsuited at the beginning of trial.  Because Ogden and
Continental did not appear at trial, Gibson and Sheffield and Creed moved for
default judgment against them.  Only defendants Sheffield and Creed appeal from
the judgment of the trial court.





[2]  In his original and first amended petitions, Gibson
alleged a cause of action for Afraud@ against all defendants.  However, in his brief,
Gibson characterizes his fraud claim as one for statutory real estate fraud
under section 27.01 of the Texas Business and Commerce Code.  Although this
issue is not contested on appeal, we note that Gibson=s pleadings support causes of action for common-law
fraud and statutory real estate fraud under Texas Business and Commerce Code _ 27.01.