# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00302-CV

### David Weller and IntegriTech Advisors, LLC, Appellants

### v.

### Mary Alice Keyes and Sean Leo Nadeau, Appellees

---

### FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-002582, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellants David Weller and IntegriTech Advisors, LLC[1] appeal from the trial court's order granting the partial-summary-judgment motion of appellees Mary Alice Keyes and Sean Leo Nadeau. Appellants argue that the trial court improperly determined that Section 21.223 of the Business Organizations Code abolishes the longstanding common-law rule that individuals are directly liable for their own fraudulent and tortious conduct even if committed in the course of their employment and independently of whether a plaintiff alleges the individuals' liability under a veil-piercing or similar theory. *See* Tex. Bus. Orgs. Code §§ 21.223 ("Limitation of Liability for Obligations"), 101.002(a) (noting that Section 21.223 applies to limited liability companies (LLCs)). For the following reasons, we reverse the trial court's summary judgment and remand this cause for further proceedings.

---

[1] We refer to appellants individually by name when necessary to distinguish between them, but otherwise we refer to them collectively as appellants.

## BACKGROUND[2]

David Weller is the president and sole member of IntegriTech Advisors, LLC, through which he provides consulting services to buyers, sellers, and brokers of airplanes and airplane parts. MonoCoque Diversified Interests LLC (MDI) buys and sells airplane parts and is wholly owned by appellees. In September 2017 appellees and Weller began discussing a potential business relationship between appellants and MDI.

After several months of negotiations, appellees offered Weller several forms of specified compensation if he agreed to full-time employment with MDI and to provide it training services. Between January 6 and 10, 2018, the parties exchanged e-mails containing the compensation terms (which appellants refer to as the "Compensation Package"). The Compensation Package included terms outlining Weller's salary, IntegriTech's training "supplement," and amounts that MDI would pay appellants based on MDI's quarterly revenues.[3] During that time, Weller had other pending employment offers, about which he informed appellees. Appellees told Weller that there were urgent matters they needed him to address and requested that he begin working for MDI January 13, 2018. In reliance on appellees' representations regarding the Compensation Package, Weller declined other employment opportunities, accepted appellees' offer, and began working for MDI January 13.

Shortly thereafter, appellees—for the first time—presented Weller with agreements concerning confidentiality, non-competition, non-solicitation, and alternative dispute resolution, which Weller did not sign. Over the next few months, the parties exchanged drafts of

---

[2] Because the issues on appeal do not turn on existence of material fact issues, we derive the background facts from appellants' live petition, their Second Amended Petition.

[3] For instance, each quarter MDI would pay IntegriTech 2% of its total gross revenue (capped at $15 million) and 2% of its gross revenue generated by Weller.

non-compete and dispute-resolution agreements but did not reach an agreement and thus never executed any such agreements. In late April 2018, MDI failed to pay appellants the promised revenue payments for the first quarter. When Weller inquired of Keyes about the past-due payments, she denied that MDI was obliged to pay the amounts because Weller had not executed the non-compete and dispute-resolution agreements. In early May, Weller and appellees met at the offices of MDI and its lawyer. At that meeting, appellees told Weller that they never intended to pay the 2% revenue interest on a quarterly basis but did agree to pay the training stipend and indicated that they would pay the 2% revenue interest at some later date. A few weeks later, Weller resigned from MDI. Keyes sent Weller a letter asserting that "no more funds are due to you by MDI" because the parties had "never reached any agreement regarding the terms of your employment." Weller responded with an invoice demanding the past-due quarterly training stipend and estimated amounts for the 2% revenue interests. Shortly thereafter, appellees' counsel wrote to Weller that "MDI never agreed to pay" him a "revenue incentive" or "training compensation" and thus nothing was owed to him.

On August 10, 2018, appellants filed this lawsuit against MDI and appellees. Against both MDI and appellees, appellants asserted a Texas Securities Act (TSA) claim; against MDI they asserted a breach-of-contract claim; and against appellees they asserted several types of fraud claims, alleging that appellees were directly liable for their own fraudulent and tortious conduct notwithstanding that they were acting as agents of MDI. MDI counterclaimed, raising claims for breach of contract, tortious interference with prospective contract, trade-secret misappropriation, and breach of fiduciary duty, among others.

Appellees and MDI filed a motion for partial summary judgment. Relevant to this appeal, appellees moved for summary judgment on "all of Weller's claims asserted against them

3

in their individual capacities because every act and omission complained of by Weller were performed in their capacities as authorized agents of MDI. Section 21.223(a)(2) of the Texas Business Organizations Code bars all of Weller's claims for relief against Defendants Keyes and Nadeau." The trial court granted appellees' partial-summary-judgment motion as to appellants' fraud claims against appellees without specifying the grounds and later granted appellees' opposed motion to sever appellants' claims against appellees from the claims against MDI.[4] Appellants then perfected this appeal.

## DISCUSSION

In their first two issues, appellants contend that the trial court erred in granting appellees summary judgment on appellants' fraud claims because the only ground raised by appellees to support such relief fails as a matter of law. *See* Tex. R. Civ. P. 166a. We review the trial court's summary judgment, including its determination of whether a statute applies to a claim, de novo. *See Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Brown v. Villegas*, 202 S.W.3d 803, 805 (Tex. App.—San Antonio 2006, no pet.) ("[T]o the extent that the resolution of the issue presented [on appeal] requires an interpretation of [the statute] or a determination that [the statute] applies to a claim, we review under a de novo standard.").

Disposition of this issue hinges on whether Section 21.223 abolishes the long-established common-law rule of agent direct liability in Texas. That rule provides that individuals are always directly liable for their own tortious conduct—even if committed in

---

[4] Appellees also moved for summary judgment on appellants' TSA claims against them, and the trial court granted summary judgment on those claims too, but appellants do not challenge that portion of the ruling on appeal.

4

the course and scope of their employment—independently of whether a plaintiff alleges the individuals' liability under a veil-piercing or similar theory. *See Miller v. Keyser*, 90 S.W.3d 712, 717–18 (Tex. 2002) (citing Texas's "longstanding rule that a corporate agent is personally liable for his own fraudulent or tortious acts" to support holding that employee acting "solely within the course and scope of his employment" was personally liable for violation of Deceptive Trade Practices Act); *Kerr v. Lambert*, No. 03-19-00359-CV, 2020 WL 6266005, at *9 (Tex. App.—Austin Oct. 23, 2020, no pet.) (mem. op.) (affirming judgment holding corporate agent personally liable for his own fraud and deeming his arguments about veil-piercing thus irrelevant); *see also Kingston v. Helm*, 82 S.W.3d 755, 765 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied) ("The law is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation."). As discussed below, we hold that appellants' fraud claims against appellees in their individual capacities are not barred as a matter of law by Section 21.223.

"Texas has long had two methods for holding individual corporate agents or officers personally liable when they are acting within the course and scope of their employment or role as corporate agents—piercing the corporate veil or direct individual liability." *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 669–70 (W.D. Tex. 2019) (collecting cases and permitting plaintiff to pursue common-law tort claims against corporate agent "individually based on his own personal tortious conduct"). As for the first method—"piercing the corporate veil" or "disregarding the corporate fiction"—in 1989 the legislature curtailed plaintiffs' use of it by enacting the predecessor of Section 21.223. *See Willis v. Donnelly*, 199 S.W.3d 262, 271–72 (Tex. 2006) (noting that legislature narrowly prescribed

circumstances under which shareholder can be held liable for corporate debts by enacting Texas Business Corporations Act article 2.21). While the legislature later amended the statute to "establish a clear legislative standard under which the liability of a shareholder for the obligations of a corporation is to be determined in the context of contractual obligations and all matters relating thereto," *id.* at 272 n.12, the statute remains applicable only to liability (1) for the company's contractual obligations and matters relating to or arising therefrom (2) that is based on a veil-piercing type of theory, *Bates*, 361 F.Supp. 3d at 666–67 (noting that some recent Texas cases have "muddled the distinction" between veil-piercing claims, which are governed by Section 21.223, and direct individual-liability tort claims, which are still governed by common law); *see* Tex. Bus. Orgs. Code § 21.223.[5]

---

[5] Section 21.223 provides

(a) A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber or of the corporation, may not be held liable to the corporation or its obligees with respect to:

. . .

(2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory[.]

Tex. Bus. Orgs. Code § 21.223. Although Section 21.223 refers only to corporations, Section 101.002(a) extends its applicability to LLCs. *See id.* § 101.002(a) (noting that subject to § 101.114, § 21.223 applies to LLC and its members, owners, assignees, affiliates, and subscribers); *see also U.S. KingKing LLC v. Precision Energy Servs., Inc.*, 555 S.W.3d 200, 213 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("The principles applicable to piercing the corporate veil apply equally to limited liability companies."); *Spring St. Partners v. Long K. Lam*, 730 F.3d 427, 443 (5th Cir. 2013) ("Veil-piercing and 'alter ego' principles apply equally to corporations and LLCs.").

The second longstanding method of holding corporate agents personally liable for actions performed within the course and scope of their employment or role as corporate agents—direct individual liability for tortious conduct—remains alive and well under the common law. The supreme court recently reaffirmed this longstanding rule, albeit without mentioning Section 21.223. *See Transcor Astra Grp. S.A. v. Petrobas Am., Inc.*, __ S.W. 3d __, No. 20-0932, 2022 WL 1275238, at *11 (Tex. Apr. 29, 2022) ("the fact that an individual was acting in a corporate capacity does not prevent the individual from being held personally—or 'individually'—liable for the harm caused by those [tortious] acts"); *see Miller*, 90 S.W.3d at 717 (same); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984) (same).

Moreover, this Court has specifically held that—despite the provisions in the Business Organizations Code limiting corporate agents' liability, and absent "clear direction from the Supreme Court holding that the legislature" has "abrogated longstanding common law recognizing that corporate agents are liable for their own tortious conduct"—LLC members are individually liable for their own tortious conduct in participating and directing wrongdoing, separate and apart from any veil-piercing or similar doctrines. *Key v. Richards*, No. 03-14-00116-CV, 2016 WL 240773, at *3 & n.4 (Tex. App.—Austin Jan. 13, 2016, no pet.) (mem. op.) (holding so even while recognizing that in Business Organizations Code legislature has "broadly insulated LLC members from liability" for LLC's obligations).[6] The majority of appellate courts specifically addressing this issue have agreed with this Court. *See Texienne Oncology Ctrs.*

---

[6] We held so in *Key* despite the fact that Section 101.114 of the Business Organizations Code provides LLC members even broader protection from liability than Section 21.223 provides corporate shareholders. *Compare* Tex. Bus. Orgs. Code § 101.114 (exempting LLC members and managers from liability for *any* "debt, obligation, or liability" of company unless company agreement provides otherwise), *with id.* § 21.223 (exempting corporate shareholders from liability for any "contractual obligation" or "any matter relating to or arising from the [contractual] obligation" "on the basis of" alter ego or similar theories).

*PLLC v. Chon*, No. 09-19-00356-CV, 2021 WL 4994622, at *7 (Tex. App.—Beaumont Oct. 28, 2021, pet. denied) (mem. op.) (holding that Section 21.223 does not preclude direct liability for corporate officer's fraudulent acts even though he performed them as corporation's agent); *Clements v. HLF Funding*, No. 05-19-01295-CV, 2021 WL 3196962, at *10 (Tex. App.—Dallas July 28, 2021, pet. denied) (mem. op.) (same); *Spicer v. Maxus Healthcare Partners, LLC*, 616 S.W.3d 59, 118 (Tex. App.—Fort Worth 2020, no pet.) (same); *Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex. App.—San Antonio 2008, no pet.) (same); *Kingston*, 82 S.W.3d at 765–67 (same); *see also In re Jamieson*, No. 19-41433, 2021 WL 438868, at *10 (Bankr. E.D. Tex. Feb. 8, 2021) ("Absent a decision by the Supreme Court of Texas to address the impact of § 21.223 upon the common law jurisprudence in this area, *Miller* and *Leyendecker* remain sound law and the common law principle that an individual acting as a corporate agent may be held individually liable for knowingly engaging in tortious conduct retains its viability."); *but see TecLogistics, Inc. v. Dresser-Rand Grp., Inc.*, 527 S.W.3d 589, 600–03 (Tex. App.—Houston [14th Dist.] 2017, no pet.)

Following our own precedent, we agree with *Bates* that Section 21.223 is "aimed [solely] at traditional veil piercing theories, which seek to hold shareholders and beneficial owners liable merely based on their status as an owner or shareholder" and is not to be used as a mechanism to "shield a corporate officer or agent who commits tortious conduct merely because the officer or agent also possesses an ownership interest in the corporation." *Bates*, 361 F. Supp. 3d at 667 (determining that common-law rule is not "superseded by § 21.223 [even] when the tort claim is related to a contractual obligation of the corporation or LLC"); *see Key*, 2016 WL 240773, at *3 & n.4. Therefore, we hold that the trial court erred in granting appellees summary judgment on appellants' fraud claims against appellees because of our legal

8

determination that Section 21.223 does not abolish the common-law rule that corporate agents are directly and personally liable for their own tortious conduct even when committed in the course and scope of their employment or in their role as corporate agents.

In their third issue, appellants complain that the trial court's severance order improperly identifies only 9 of the approximately 175 total filings from the original cause to be included in the file of the severed cause. They argue that the "failure to include the entirety of the record may be used in an unfair attempt to limit a party's right to meaningful appellate review and waste the parties' and the court's time and resources." However, appellants requested that the clerk's record contain more than those 9 filings, as is permissible, *see* Tex. R. App. P. 34.5(a)(13); the trial-court clerk included those requested items (including via supplemental clerk's records), *see id.* R. 34.5(c); and this Court denied appellees' "Motion to Strike Portions of Clerk's Record and Motion to Enforce Severance Order." Therefore, even if it was error for the severance order to identify only the 9 filings at issue as those to be included in the severed cause, appellants have not demonstrated that the alleged error (1) probably caused the rendition of an improper judgment or (2) prevented them from properly presenting the case to this Court. *See id.* R. 44.1 (harmful-error rule). We therefore overrule appellants' third issue.

**CONCLUSION**

We reverse the trial court's order granting appellees summary judgment on appellants' fraud claims and remand this cause for further proceedings consistent with this opinion.

9

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Smith

Reversed and Remanded

Filed:   August 24, 2022