**Reversed in Part, Affirmed in Part, and Remanded, and Memorandum Opinion filed July 25, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00312-CV

---

### BIJAN MERRIKH, Appellant

### V.

### JOSEPH COSTA AND JOHNA COSTA, Appellees

---

### On Appeal from the 125th District Court
### Harris County, Texas
### Trial Court Cause No. 2018-28389

---

### MEMORANDUM OPINION

Raising six issues on appeal, appellant Bijan Merrikh challenges the final judgment rendered by the trial court in favor of appellees Joseph Costa and Johna Costa on their breach of contract, Deceptive Trade Practices–Consumer Protection Act (DTPA),[1] and common-law fraud claims. Merrikh argues that the trial court erred because there is legally insufficient evidence to support the trial court's

---

[1] *See* Tex. Bus. & Com. Code Ann. §§ 17.41–.63.

judgment with respect to (1) the Costas's breach-of-contract claim; (2) the Costas's fraud claim; (3) the Costas's DTPA claim; and (4) the Costas's negligent-misrepresentation claim. Merrikh also argues that the trial court erred by (5) not requiring the Costas to make an election of remedies; and (6) awarding attorney's fees that were not properly segregated by claim or cause.

We conclude there is no evidence supporting the trial court's judgment on the Costas's breach-of-contract claim. We also conclude that the trial court erred by not requiring the Costas to segregate their attorney's fees. Therefore, we remand the cause to the trial court and order the trial court (1) to render judgment denying the Costas's breach-of-contract claim, and (2) to conduct further proceedings limited to the determination of reasonable and necessary attorney's fees to be awarded to the Costas as a result of their DTPA claim and in light of our conclusion that the Costas did not attempt to segregate their attorney's fees or meet their burden to establish that segregation was not required.

## I. BACKGROUND

Joseph and Johna Costa are the owners of a 2012 Land Rover Range Rover Sport HSE (the Range Rover). In 2017, the engine in the Range Rover failed and the Costas sought to replace the engine with a used engine. Although they lived in Louisiana at the time, the Costas found an online advertisement for a replacement engine at Quality Auto Dismantle, LLC (QAD) in Houston. Bijan Merrikh was working at QAD at the time, a business owned by Merrikh's son.

The Costas paid $8,800 for the replacement engine. Even though QAD was not a repair shop and generally offered no mechanical services, Merrikh agreed to install the replacement engine in the Range Rover. After the first replacement, Johna drove the Range Rover to Louisiana and then heard a knocking noise in the engine. The Range Rover was towed back to Merrikh's shop and Merrikh installed

2

a second engine in the Range Rover. QAD kept no records of the services performed. Ultimately, four or five used engines were installed in the Range Rover although the Costas only paid for one engine. Johna testified that five used engines were installed in the Range Rover. In contrast, Merrikh testified he thought only four engines were installed, but he was not certain.

After the final engine was installed in the vehicle, Johna drove the Range Rover to Denver, Colorado. After reaching Denver, the vehicle overheated and Johna had to have the vehicle towed to a repair shop. The Denver repair shop inspected the vehicle and concluded that the engine was improperly installed, with various critical parts missing. The owner of the Denver shop, who testified at trial as an expert, also testified that several temperature sensors were unplugged or bypassed so that the "check engine" lights would not notify the driver of an issue.

In 2018, the Costas filed suit against Merrikh, his son, and QAD. At that time, QAD had forfeited its corporate existence and privileges. A default judgment was taken against QAD on the Costas's claims against it. The judgment against QAD was then severed from the Costas's claims against Merrikh and his son. At trial, the Costas's claims against Merrikh's son were dismissed because there was no evidence Merrikh's son ever communicated with the Costas about the Range Rover or was involved in the repairs.

After a bench trial, the trial court rendered judgment in favor of the Costas against Merrikh, personally, as follows: (1) economic damages for breach of contract in the amount of $69,881.70; (2) additional damages under the DTPA of $139,763.40;[2] (3) actual damages for fraud in the amount of $69,881.70; and (4) reasonable and necessary attorney's fees in the amount of $32,210.06.

---

[2] The final judgment does not award and the Costas do not recover any economic damages under the DTPA. This issue has not been challenged on appeal by either party.

## II. ANALYSIS

### A. Standard of review

Most of Merrikh's appellate issues involve legal-sufficiency challenges, so we first consider the scope of our review. When a party challenges the legal sufficiency of the evidence supporting an adverse finding on which the party did not have the burden of proof at trial, the party must demonstrate no evidence exists to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal-sufficiency review, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the fact-finder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

### B. Breach-of-contract claim

In issue 1, appellant argues the trial court erred in rendering judgment on the Costas's breach-of-contract claim because the only contract was with QAD, for which Merrikh was acting as a salesperson or agent. Restated, Merrikh argues there is no evidence to support a finding there was a contract between the Costas and Merrikh.

In their original petition, the Costas alleged that there was a valid enforceable contract between the Costas and Merrikh "to procure the replacement of an engine in proper working condition in exchange for a certain sum of money." The trial court's findings of fact state the following:

> The execution of the invoice represents a valid, enforceable contract.
> See Plaintiffs' Exhibit 2. Plaintiffs contracted with Defendant to

4

procure the replacement of an engine in proper working condition in exchange for a sum of money. Trial testimony indicates that Defendant Bijan Merrikh was to install an engine into the Plaintiffs' vehicle and provide a working vehicle. Pursuant to the contract, Plaintiffs tendered payment for the engine installation and repairs to the vehicle. See Plaintiffs' Exhibit 2. However, Defendant failed to provide a properly working vehicle as requested for and bargained for by Plaintiffs.

The elements of a breach-of-contract claim are: (1) a valid contract; (2) the party suing to enforce the contract performed or tendered performance; (3) the other party breached the contract; and (4) the suing party was damaged as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). Here, Merrikh disputes that he was a party to the contract.

The invoice relied on by the Costas is only in the name of QAD. The invoice does not include Merrikh's name or signature anywhere. Although it contains space for the name of a sales representative to be listed, that section is blank. Merrikh did fill out the form and negotiate the transaction; however, there is no evidence that Merrikh did so in any capacity other than as employee or agent. The trial court's findings of fact and conclusions of law offer no legal explanation or support for the conclusion that Merrikh can be held personally liable for a contract of QAD.

The Costas argued that the Tax Code allowed them to pursue Merrikh personally. The Tax Code does provide that if a corporation forfeits its privileges (and existence) because it has failed to file a report or pay a penalty, the directors and officers of the corporation are liable for the debts of the entity incurred during the time the privileges of the corporation are forfeited. Tex. Tax Code Ann. § 171.255(a), .2515 (applying section 171.255 to all taxable entities including limited liability companies); *Bruce v. Freeman Decorating Servs., Inc.*, No. 14-10-00611-CV, 2011 WL 3585619, at *2 (Tex. App.—Houston [14th Dist.]

5

Aug. 16, 2011, pet. denied) (mem. op.). However, the contract for the replacement engine was dated in 2017 when QAD still maintained its legal privileges. And even if there had been any contractual activity after QAD forfeited its privileges, there was no evidence at trial reflecting that Merrikh was a director or officer of QAD necessary to invoke the liability provisions of the statute. At trial, Merrikh testified that he was working for QAD, which was formed and owned by his son. Therefore, there was no evidence supporting any personal liability on the part of Merrikh.

On the record created below, we conclude there was no evidence to support the judgment against Merrikh, personally, for breach of contract based on the invoice for the engine installation.

We sustain issue 1.

## C. Fraud

The trial court rendered judgment in the Costas's favor on both theories of fraud they asserted: fraud by misrepresentation and fraud by nondisclosure. In issue 3, appellant argues there was no evidence to support the trial court's judgment against him for common-law fraud.

Merrikh only challenges the trial court's judgment based on findings of fact on common-law fraud or fraud by misrepresentation. He does not challenge any of the trial court's findings of fact establishing fraud by nondisclosure (omission). Therefore, Merrikh has not challenged all the trial court's findings of fact and conclusions of law supporting its judgment against Merrikh for fraud.

We overrule issue 3.

## D. DTPA claim

In issue 4, Merrikh argues that the trial court's findings with respect to the Costas's DTPA claim are erroneous because the Costas offered no evidence to

6

support the elements of their claim.

## 1. Applicable law

The DTPA serves "to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." Tex. Bus. & Com. Code Ann. § 17.44(a). The supreme court has held that the DTPA should be liberally construed to protect consumers from deceptive business practices. *Miller v. Keyser,* 90 S.W.3d 712, 715 (Tex. 2002).

The elements of a DTPA cause of action are: (1) the plaintiff is a consumer; (2) the defendant violated a specific DTPA provision; and (3) the violation was a producing cause of the plaintiff's damages. Tex. Bus. & Com. Code Ann. § 17.50(a); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). "Producing cause" means "a substantial factor which brings about the injury and without which the injury would not have occurred." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 481 (Tex. 1995). Thus, there must be evidence that the consumer was adversely affected by the defendant's improper conduct. *See id.* (citing *Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex. 1987)). A consumer is not required to prove intent to make a misrepresentation to recover under the DTPA. *Keyser*, 90 S.W.3d at 716. Misrepresentations that may not be actionable under common-law fraud may be actionable under the DTPA. *Id*. Thus, Merrikh may be held liable under the DTPA even if he did not intend to deceive anyone. *See e.g.*, *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 724 (Tex. 1990).

## 2. Liability as salesperson

Before we address his substantive challenges to the trial court's DTPA

7

findings, we address Merrikh's arguments that the trial court's judgment cannot be sustained against him because he was merely working as a salesperson for QAD. However, the DTPA does not so narrowly limit relief for consumers. The DTPA provides that:

> a consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is: (A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and (B) relied on by a consumer to the consumer's detriment[.]

Tex. Bus. & Com. Code Ann. § 17.50(a) (emphasis added). "Person" is specifically defined to include "an individual, partnership, corporation, association, or other group." Tex. Bus. & Com. Code Ann. § 17.45(3). Merrikh was the only person with whom the Costas had any meaningful interaction regarding the engine replacement and the status of repairs. Under the DTPA, Merrikh is responsible for his own conduct and interactions with the Costas. *Keyser*, 90 S.W.3d at 716.

### 3. Trial court's findings

The trial court found that the Costas were consumers, which Merrikh does not dispute. However, on appeal, Merrikh maintains there was no evidence supporting the trial court's findings that he violated the DTPA in the following ways:

> Defendant engaged in false, misleading, or deceptive acts or practices that Plaintiffs relied on to Plaintiffs' detriment. Specifically, Defendant:
>
> > i. Represented that good or services had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they did not have;
> >
> > ii. Represented that goods or services were of a particular standard, quality, or grade;

iii. Knowingly made false or misleading statements of fact concerning the need and quality of parts, replacement, or repair service;

iv. Represented that work or services had been performed on, or parts replaced in, [] when the work or services were not performed, or the parts replaced; and

v. Failed to disclose information concerning goods or services which were known at the time of the transaction when failure to disclose such information was intended to induce the consumer into a transaction which the consumer would not have entered had the information been disclosed. Tex. Bus. & Com. Code Ann. § 17.46(b).

### 4.  Failure to disclose

To prevail on their claim for failure to disclose under the DTPA, the Costas had the burden to prove (1) Merrikh knew information regarding the capability for repairs services at QAD, (2) the information was not disclosed, (3) there was an intent to induce the consumer to enter into the transaction through the failure to disclose, and (4) the consumer would not have entered into the transaction had the information been disclosed. Tex. Bus. & Com. Code Ann. § 17.46(b)(24); *see Jasek v. Tex. Farm Bureau Underwriters*, No. 14-19-00759-CV, 2022 WL 364050, at \*3 (Tex. App.—Houston [14th Dist.] Feb. 8, 2022, no pet.) (mem. op.); *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App.—Fort Worth 2006, no pet.). Mere nondisclosure of material information is not enough to establish an actionable DTPA claim; there must be an intent to induce. *See* Tex. Bus. & Com. Code Ann. § 17.46(b)(24).

Any false, misleading, or deceptive act must also be relied upon by the consumer. Tex. Bus. & Com. Code Ann. § 17.50(a)(1)(B). However, in contrast to a fraud cause of action, the DTPA does not require proof of justifiable reliance; rather, the DTPA simply requires the consumer's detrimental reliance. *See id.*

There is undisputed evidence that Merrikh failed to disclose material information about QAD's capability for "repair services." Merrikh knew, but testified he did not tell the Costas, that he was not a mechanic and that QAD did not have any employees who were mechanics. He did not disclose that, at best, he and potentially some other employees of QAD had mechanical knowledge. He did not disclose that neither he nor QAD had ever performed engine replacements and QAD did not possess the tools and equipment needed to properly evaluate the functioning of the Range Rover. Given that the Costas paid to have the Range Rover towed to Houston for an engine replacement, there is undisputed evidence that the Costas believed QAD had the capability of performing the engine replacement. Johna testified that if QAD had not been able to perform the engine replacement, she would have purchased the used engine and had it shipped to a repair shop in her area.

There was legally-sufficient evidence supporting the trial court's findings that Merrikh failed to disclose information concerning engine-replacement services, which he knew at the time of the transaction and did not disclose, because he intended to induce the Costas into a transaction they might not have otherwise contemplated. Tex. Bus. & Com. Code Ann. § 17.46(b)(24). Having concluded that the trial court did not err in finding that Merrikh violated the DTPA by committing at least one of the acts enumerated in the DTPA "laundry list," we need not address the other DTPA findings. *Main Place Custom Homes, Inc. v. Honaker,* 192 S.W.3d 604, 625 (Tex. App.—Fort Worth 2006, pet. denied) (because evidence was sufficient to support violation of at least one laundry list prohibition, there was no need to address contentions as to remaining DTPA violations); *see also* Tex. R. App. P. 47.1 (opinion must address every issue necessary to final disposition of appeal).

We overrule issue 4.

## E. Negligent misrepresentation

In issue 5, appellant argues that the trial court erred in rendering judgment against him individually for negligently misrepresenting a material fact. Although the Costas pleaded negligent misrepresentation, the final judgment does not contain a liability finding on negligent misrepresentation, nor do the trial court's findings of fact and conclusions of law address the Costas's negligent-misrepresentation claim.

We overrule issue 5.

## F. Election of remedies

In issue 6, Merrikh argues the trial court erred by not requiring the Costas to make an election of remedies for recovery.

To the extent that Merrikh seeks to preclude the Costas from obtaining more than one recovery for their injury, any error on this issue was not preserved for appellate review.[3] *See Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988) (error must have been brought to trial court's attention); Tex. R. App. P. 33.1(a). The record does not reflect that Merrikh brought this issue to the trial court's attention after the judgment was rendered.[4]

---

[3] For fraud, the Costas could recover economic damages, but not attorney's fees. For a DTPA violation, the Costas could recover economic damages and attorney's fees. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006). The Costas are not entitled to recover their economic damages twice; however, they had the right to judgment on the theory entitling them to the greatest or most favorable relief. *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988). But, given that the trial court did not award economic damages to the Costas under the DTPA, it does not appear that they recovered their economic damages twice.

[4] Further, Merrikh only challenges on appeal that the Costas must elect between fraud damages and breach-of-contract damages. We have already held that the Costas cannot recover on their breach-of-contract claim against Merrikh personally and that claim should be denied.

11

Because Merrikh did not preserve error on this issue, we overrule issue 6.

## G.    Attorney's fees

In issue 2, Merrikh asserts he is entitled to a reversal and "reformation" of the judgment on the award of attorney's fees because the evidence is conclusive that the Costas did not segregate their fees. Merrikh argued to the trial court that the Costas had not properly segregated their attorney's fees and cross-examined the Costas's attorney's fees expert on that issue.

Parties have always been required to segregate fees between claims for which they are recoverable and claims for which they are not. *Chapa*, 212 S.W.3d at 311. However, the supreme court has recognized that an exception exists "when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991). Therefore, if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. *Chapa*, 212 S.W.3d at 313. However, "intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id*.

The trial court found that the Costas were entitled to recover $32,210.06 in reasonable and necessary attorney's fees for their breach-of-contract and DTPA claims. The Costas's attorney's fees expert, John Davis, testified that the total attorney's fees incurred from inception of the case through trial was $45,505.07. He also testified that the requested attorney's fees were not segregated by claim or by cause number, even though a judgment had been rendered against QAD in favor of the Costas awarding attorney's fees long before the trial against Merrikh. Davis

12

stated that the claims against the various defendants were intertwined and could not be segregated because: "It's the same people. It's the same parties. It's the same stuff."

As the parties seeking attorney's fees, the Costas bore the burden of demonstrating that segregation was not required. *Sustainable Tex. Oyster Res. Mgmt., L.L.C. v. Hannah Reef, Inc.*, 623 S.W.3d 851, 872 (Tex. App.—Houston [1st Dist.] 2020, pet. denied); *Clearview Props., L.P. v. Prop. Tex. SC One Corp.*, 287 S.W.3d 132, 144 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Here, Davis offered no expert testimony supporting the Costas's contention that all attorney's fees supporting any claims against any of the defendants (including the severed corporate defendant, QAD) were recoverable against Merrikh personally. His conclusory response that it was all the same people and "stuff" is not evidence that will satisfy the Costas's burden that segregation was not required.[5] On cross-examination, Merrikh highlighted the fact that the Costas's requested attorney's fees included time entries for collecting on the judgment against QAD, after the judgment against QAD was severed. Davis repeatedly confirmed that his firm had not attempted to segregate fees by claim—even though the Costas had made claims for which attorney's fees were not recoverable—or by cause number.[6] We conclude that the Costas did not meet their burden.

At least some of the work performed by the Costas's attorneys related (1) solely to claims which attorney's fees are unrecoverable and (2) after 2019 to collection from a defendant no longer part of the lawsuit. *See Sustainable Tex.*

---

[5] Initially, Davis testified that total reasonable and necessary expenses incurred through trial was $45,505.07. He then testified that after subtracting the amount of attorney's fees awarded against QAD in 2019 the total amount of attorney's fees incurred was $30,536.06.

[6] Davis's testimony appeared to be informed by a belief that Merrikh should be liable for the debts of QAD, even though the Costas did not plead or introduce any evidence to support the disregard of corporate formalities.

13

*Oyster Res. Mgmt.*, 623 S.W.3d at 874 (concluding that party seeking attorney's fees must segregate fees for drafting portions of petitions relating solely to three tort claims for which fees are not recoverable); *see also Chapa*, 212 S.W.3d at 314 ("[W]hen, as here, it cannot be denied that at least some of the attorney's fees are attributable only to claims for which fees are not recoverable, segregation of fees ought to be required"); *CA Partners v. Spears*, 274 S.W.3d 51, 84 (Tex. App.— Houston [14th Dist.] 2008, pet. denied) (noting that each counterclaim, including claims for which attorney's fees were unrecoverable, required drafting separate portions of pleading, separate legal research, and possibly separate discovery requests, and party was therefore required to segregate fees).

We hold that the trial court erred by failing to require the Costas to segregate their attorney's fees. Because the total amount of unsegregated fees incurred by the Costas is some evidence of the proper amount of attorney's fees to award, we remand the cause for further proceedings limited to allowing the Costas to properly prove their recoverable attorney's fees. *See Chapa*, 212 S.W.3d at 314 (stating that party's failure to segregate attorney's fees "does not mean she cannot recover any" because unsegregated attorney's fees for entire cause are "some evidence of what the segregated amount should be").

We sustain issue 2.

## III. CONCLUSION

Having sustained issue 1, we reverse the final judgment of the trial court as to the Costas's breach-of-contract claim. Having sustained issue 2, we reverse the final judgment of the trial court as to the award of attorney's fees to the Costas. We remand the cause to the trial court and order the trial court (1) to render judgment denying the Costas's breach-of-contract claim, and (2) for further proceedings limited to the determination and award of reasonable and necessary attorney's fees

14

to be awarded to the Costas on their DTPA claim and in light of our conclusion that the Costas did not attempt to segregate their attorney's fees or meet their burden to establish that segregation was not required. The remainder of the judgment as challenged on appeal is affirmed.


/s/      Charles A. Spain
         Justice

Panel consists of Justices Wise, Spain, and Hassan.

15